In re UNITED BANCROFT HOTEL CO.

No. 55934.

United States District Court
D. Massachusetts.

Oct. 20, 1949.

Guterman & Guterman, Boston Mass., for petitioners.

June & Whipple, Worcester, Mass., for Worcester County Trust Co., trustee.

·FORD, District Judge.

This is a petition for an order clarifying and interpreting the orders and decrees previously entered by this court and the instruments executed pursuant to a plan of reorganization previously approved and confirmed by this court. Petitioner, The Bancroft Hotel Corporation, was organized, in pursuance of the plan, as successor to the debtor, the United Bancroft Hotel Company.

The present petition deals with the provisions of the plan relating to the debtor's "First and Refunding Mortgage 6½% Income Bonds." These bonds had been issued in 1924, with a maturity date of September 1, 1943, and were secured by a mortgage on real estate of the debtor under an indenture of trust between Bancroft Realty Company, the debtor's predecessor, and the Merchants National Bank of Worcester, as trustee, (hereinafter called the· original indenture). Payment of interest on these bonds ceased on March 1, 1932. Thereafter, in 1934, proceedings for reorganization of the debtor were begun in this court. At that time said bonds were outstanding in the principal amount of $818,000. Redemption of these bonds before maturity was governed by Article II of the original indenture, which provides:

· "Call And Payment Of Bonds

"The Trustee may, at the request of the Company, and upon being provided with funds for the purpose, call· for payment on any semi-annual interest day, on the terms hereinbelow fixed, the whole or any part of the series of bonds issued here-·under at any one time out-standing (the bonds so called to be determined by lot by the Trustee) at one hundred seven and one-half per cent. (107½%) of the principal thereof together with interest accrued ·to the call day, by publishing notice of said call twice a week for three (3) successive weeks in one or more newspapers published in Worcester, Massachusetts, having a general circulation, the first publication in each paper to be not less than thirty (30) days prior to the date fixed for such payment, and shall mail notice thereof to the registered holder of any bond thus called at his registered address. The Trustee shall cancel all such bonds thus called, upon the presentation thereof for payment. Such notice being given, interest on all bonds so called shall cease from and after the date fixed for payment in the call."

The provisions of the amended plan, insofar as they affected the holders of the debtor's 6½% bonds, may be summarized as follows: a new corporation was to be formed as successor to the debtor; holders of the 6½% bonds were to surrender them for cancellation and receive bonds of the new corporation of equivalent principal amount, bearing interest at 6½% from September 1, 1935 and maturing September 1, 1943; each bondholder also was to receive shares of the class A common stock of the new corporation at the rate of ten shares for each $1000 bond, these shares to be delivered to trustees under a voting trust, and the bondholders actually receiving trust certificates; these certificates were to be attached to the bonds to which they related, and neither the bond nor its related voting trust certificate was to be transferable separately until the termination of the voting trust, which was to take place five years after· the confirmation of the plan, or upon sale of the class A common stock by the trustees; the latter were authorized to· sell these shares, but not in part and not for less than $25 per share, or to transfer them to holders of the class B common stock if the latter should pay to the holders of the 6½% bonds the principal of said bonds and interest at 6½% from March 1, 1932. The amended plan also provided for the calling of the bonds for redemption before maturity, as follows:

"The new bonds, with the Class A common stock voting trust certificate, to which the bonds relate, may, pursuant to the method provided in Article II of said First and Refunding Mortgage 6½% Bond Indenture, be called and redeemed from the holder thereof on any interest date before maturity, at a redemption price which shall be the principal amount thereof and interest at 6½% thereon from March 1, 1932 to the date of call, less any interest and dividends paid thereon between said dates."

If the trust terminated without sale of the class A common stock, then the shares were to be distributed to the holders of the voting trust certificates.

The plan was approved and confirmed and in execution thereof the petitioner was organized. A new supplemental indenture was entered into on December 31, 1935 between petitioner and the Worcester County Trust Company, as trustee, which set forth these provisions as to the new 6½% bonds, and "ratified and confirmed, assumed and adopted" all the provisions of the original indenture as modified by these new provisions. No change was made in Article II of the original indenture except by the provisions in Article III, section 2, of the supplemental indenture, as follows:

"Whenever in the Original Indenture reference is made to any premium on any Bond, such reference shall be deemed to be deleted."

The new 6½% bonds issued by petitioner were not paid at maturity on September 1, 1943. The voting trust terminated at the expiration of five years, the trustees not having sold the class A common stock, and this stock was distributed to the certificate holders. Since then the bonds and the shares have been transferable separately, and are no longer held by the same persons in the same proportions.

An amended supplemental indenture between petitioner and the Worcester County Trust Company dated November 1, 1943 provided for certain modifications in the original indenture of 1924 as modified by the supplemental indenture of 1935. Maturity date of the bonds was extended to September 1, 1963, the default in payment on September 1, 1943 was waived, and distribution of shares of class A common stock on termination of the voting trust was provided for. No express change was made in the provisions for redemption of the bonds. The preceding indentures as thus modified were extended, ratified, and confirmed.

Petitioner now desires to call its 6½% bonds for redemption and a controversy has arisen as to the price at which it is entitled to redeem them. Petitioner seeks a declaration that upon a correct interpretation of the plan and the indenture executed pursuant to the plan, it may redeem the bonds upon payment of principal and interest as yet unpaid from September 1, 1935. Worcester County Trust Company (hereinafter called the trustee) contends that the bondholders are entitled to receive interest from March 1, 1932.

■■■ It is first of all necessary to consider the question of the jurisdiction of this court in the matter. Trustee suggests that the indenture of November 1, 1943 is an entirely new contract between the parties, and that the sole question here is one of interpreting a contract which is wholly unconnected with the reorganization proceedings had in this court. This does not appear to be the correct view of what was done in 1943. The indenture then executed was merely a modification or amendment of the original indenture already modified in 1935 under the reorganization plan. It clearly recognizes the continuance of all the obligations of the parties under the previous indentures except for the modifications it makes. It is not a new contract which merely incorporates by reference certain appropriate provisions from a previous contract dealing with the same or similar subject matter, but rather in the nature of an amendment intended to be incorporated into the previous indenture so as to form with it a single contract, not a new contract, but the previously existing contract continuing in a modified form. The question here is essentially one of determining what, under the correct interpretation of the plan and the indenture executed pursuant thereto, are the present obligations of the parties. Such a question is clearly prop-

er matter for the jurisdiction of this court, which has the power to interpret its own orders and decrees in aid of their proper execution. Shores v. Hendy Realization Co., 9 Cir., 133 F.2d 738; In re Flatbush Ave.-Nevins St. Corporation, 2 Cir., 133 F.2d 760.

The determination of the question on the merits depends upon whether the redemption of the bonds is to be governed (a) by Article II of the original indenture, as modified by the provisions of the 1935 indenture eliminating the requirement of any payment of premium, or (b) by the provisions of the 1935 indenture, Article III, section 4 incorporating the requirement of Article II, paragraph 4, section B of the amended plan.

The redemption provisions of Article II of the original indenture were not entirely eliminated by subsequent indentures, but only modified by elimination of any premium requirement. It was intentionally left in, for the specific redemption provisions added by the plan and the new indenture are stated to be provisions for redemption in accordance with Article II of the original indenture. Article II is still the general provision governing redemption and must govern here unless the alternative provisions of the plan and the 1935 indenture are still applicable. I find that they are not.

The redemption provisions of the plan and the 1935 indenture were intended to be applicable only to a special situation existing for a limited time. They are not provisions for the redemption of the bonds alone, but for redemption of the bonds with attached and related voting trust certificates. These certificates no longer exist, the shares to which they referred are now separately transferable and are no longer necessarily held by the same persons who hold the bonds. It would, then, as a practical matter, be impossible to apply the 1935 indenture redemption provisions to the present situation.

Moreover, the whole scheme of the plan indicates that they were not intended to apply. Under the plan, the bondholders exchanged their bonds for others of the same principal amount and having the same rate of interest, but bearing interest only from September 1, 1935. The interest on the old bonds from March 1, 1932 to September 1, 1935 was still unpaid and the shares of class A common stock were clearly intended to compensate them for that interest. Until the termination of the voting trust these shares were not subject to control of the bondholders, but they were to be protected by the provisions that upon call of their bonds for redemption, they would also surrender the voting trust certificates they held and receive instead the interest in lieu of which these certificates had been received. They were similarly protected should holders of the class B common stock acquire class A common stock held by the trustees, and also by the requirement that sale of the class A common stock by the trustees should be for not less than $25 per share, an amount which would yield a sum approximately equal to the amount of the unpaid 1932–1935 interest.

The protection thus afforded to the bondholders is no longer necessary, nor is it any longer appropriate. The voting trust agreement has been terminated, and since 1943 the bondholders have been free to dispose of their holdings of class A common stock and to realize whatever value they possess. They have received in full what the plan intended should be basically their compensation for the wiping out of their rights to the unpaid 1932–1935 interest. Some of them, perhaps many, have already so disposed of their shares. It would clearly be inequitable to hold that the petitioner is still bound to pay this interest in full when they have already been able to realize on the value of what they accepted as a substituted equivalent. It would not be fair to those bondholders who still retain their shares to be compelled to surrender them with the bonds for the same price as is paid to others who have sold their shares. Nor would it be fair to petitioner to compel it to pay the full amount of interest since March 1, 1932, and allow these bondholders to retain their class A shares as a windfall certainly not contemplated at the time of the reorganization. Such an inequitable result

694

cannot have been what was intended by the court or the parties to the reorganization.

Consequently, I conclude that upon a proper interpretation of the amended plan as approved and confirmed by the court, and of the indenture executed in pursuance of that plan, the provisions relating to the payment of interest from March 1, 1932 upon bonds called for redemption were intended to apply only so long as these bonds and the related voting trust certificates were not separately transferable; that since the termination of the voting trust said provisions are no longer applicable to redemption of the bonds alone; that the redemption of bonds is now governed by Article II of the indenture of September 2, 1924 as modified by Article III, section 2 of the supplemental indenture of December 31, 1935, and that petitioner is entitled thereunder to redeem said bonds upon payment of the principal amount thereof together with the interest at 6½% accrued thereon since September 1, 1935 and still remaining unpaid.

An order will be submitted.