### In re UNITED BRICK & TILE CO.
#### No. 1295.

United States District Court
D. Delaware.
Nov. 29, 1950.

270

Louis J. Finger (of Richards, Layton & Finger), of Wilmington, Del., for United Brick & Tile Co., debtor.

No appearance for bondholders.

LEAHY, Chief Judge.

By order of this court an amended plan of reorganization of United Brick & Tile Company was approved, on May 26, 1939. Under the plan, the reorganized company was ordered to deliver 56,110 shares of its stock direct to the holders of certain outstanding collateral trust bonds of United Brick Corporation. In the final decree, entered on December 21, 1939, this court reserved jurisdiction of the litigation for the purpose of determining any question as to the interpretation of the amended plan, as well as the entry of any further order in connection with the exchange of

the bonds for stock.[1] Out of the 56,110 shares of stock originally issued, 2,590 shares have not been exchanged. Since the approval of the plan, eight dividends, each for 50¢ per share, have been declared. A reserve of $10,360.00 for the payment of the dividends on the 2,590 shares has been set up.

The former Debtor has now filed a petition seeking a cut-off date for the further exchange as contemplated by the plan. Notice was given of a hearing and the filing of objections. At the hearing no objections were filed and no bondholders appeared.

■ 1. There is no question but that the Chandler Act, 11 U.S.C.A. § 1 et seq., applies since the original proceeding was pending on September 22, 1938, and the effective date of the Chandler Act was September 22, 1938.[2] In fact, by order of this court of October 6, 1938, it was specifically found that the provisions of the Chandler Act applied to the instant entire reorganization. Moore's Collier on Bankruptcy, 14th ed., pp. 2889-2890, discusses the applicable provisions of the Chandler Act in fixing cut-off dates. It is there stated:

"Sections 204 and 205, 11 U.S.CA. §§ 604, 605, cover matters not dealt with in former § 77B. Section 204 reads as follows:

"'Upon distribution, as provided in section 224 of this act, the judge may, upon notice to all persons affected, fix a time, to expire not sooner than five years after the final decree closing the estate, within which, as provided in the plan or final decree—

"'(1) the creditors, other than holders of securities, shall file, assign, transfer, or release their claims; and

"'(2) the holders of securities shall present or surrender their securities. After such time no such claim or stock shall participate in the distribution under the plan.'"

"Section 205 prescribes that:

"'The securities or cash remaining unclaimed at the expiration of the time fixed as provided in section 204 of this act, or of any extension thereof, shall become the property of the debtor or of the new corporation acquiring the assets of the debtor under the plan, as the case may be, free and clear of any and all claims and interests.'"

■ So, too, under § 2, sub. a (8) of the Chandler Act, 11 U.S.C.A. § 11, sub. a(8), it is provided the power of courts of bankruptcy to reopen estates is broadened and such courts may: "(8) * * * reopen estates for cause shown".[3]

1. The final decree, entered on December 21, 1939, provided that the court: "reserves jurisdiction for the purpose of determining or adjudicating any question relative to the construction or interpretation of the Amended Plan of Reorganization confirmed herein, or of any other order entered in these proceedings, as well as to make and enforce such further orders as the Court may deem necessary or proper with respect to the exchange of the Collateral Trust Bonds of United Brick Corporation for shares of capital stock of the Debtor by persons who, by virtue of said Amended Plan of Reorganization, are entitled to make such exchanges."

2. 1 Moore's Collier on Bankruptcy (14th ed.), p. 21, and § 276, sub. c (2) of the Chandler Act, 11 U.S.C.A. § 676, sub. c (2), which provides:
"c. The provisions of sections 77A and 77B of chapter VIII, as amended, of the Act entitled 'An Act to establish a uniform system of bankruptcy throughout the United States", approved July 1, 1898 [11 U.S.C.A. §§ 206, 207], shall continue in full force and effect with respect to proceedings pending under those sections upon the effective date of this amendatory Act, except that—
* * * * * *
"(2) if the petition in such proceedings was approved more than three months before the effective date of this amendatory Act, the provisions of this chapter shall apply to such proceedings to the extent that the judge shall deem their application practicable; and
* * *."

3. This section, before amended in 1938, read: "8 * * * reopen them whenever it appears [that] they were closed before being fully administered".
The Chandler Act, therefore, broadened the power of the district courts to

■ 2. In the case at bar, jurisdiction was reserved. This reservation affords a clear basis for the assumption of relief on the present petition. In fact, the reservation of jurisdiction is express, viz., in matters affecting the exchange of collateral trust bonds for stock. In fixing the cut-off date here the court is merely giving efficacy to its former decree after experience demonstrated that a number of bond creditors are not exchanging their bonds for stock under the plan within a reasonable time. In approving the amended plan and reserving jurisdiction, it was neither the intention of the parties nor the court that the bondholders were to hold their securities *in perpetuam*.

■ Moreover, the continued existence of holders of unexchanged bonds, causing the necessity of setting aside dividends as they accrue, results in an indefinite, contingent liability and subverts one of the purposes of the plan—to reorganize the capital structure. Little argument is needed to demonstrate that a cut-off date is proper and necessary to give effect to any plan; and the reservation of jurisdiction for this purpose was not only proper but desirable. Experience demonstrates this.[4]

■ As stated, there can be no question but that under the Chandler Act the court has broad discretion to reopen a bankruptcy proceeding.[5] Therefore, it appears the statutory authority alone is sufficient to empower the court to reopen the present proceedings. Even in the absence of statutory authority, it has been suggested that a bankruptcy court may reopen proceedings for the purpose of fixing a cut-off date where the same merely calls for an administrative change in the plan.

In re City Stores Company, D.C.Del., 94 F.Supp. 266.[6] The purpose of the requirement of a final cut-off date, which has the effect of closing an estate, is to relieve the bankrupt enterprise from the consequences and liabilities of its past; and also to take it from without the tutelage of the court. In the case at bar, the company is saddled with a contingent liability as to the unexchanged bonds; all this has nothing to do with its present business; it is a vestigial remnant of the old reorganization. In short, the estate has not been closed. With the entry of a cut-off order it will, in effect, be closed. Thus, the court, in the exercise of its discretion, in cases of this nature, reopens the estate in order to direct an administrative change in the plan in order that it may, in turn, effectively close the estate. And thus, it finally accomplishes the manifest purpose of the Bankruptcy Act.

■ 3. The proposed procedure affecting the exchange of bonds for stock is not inequitable. The security holder has had more than ten years to present his bonds. Sufficient notice has gone out. Sufficient notice will go out concerning this court's order; and the present holders will finally be allowed a reasonable length of time within which to exchange their bonds, as originally contemplated by the plan.[7]

■ It is the final conclusion, in the instant case, that the reservation of jurisdiction in the court's final decree approving the plan was sufficient to empower the court now to make the order requested. Moreover, § 2, sub. a (8) together with §§

---

reopen estates. 1 Moore's Collier, ibid., pp. 243–252. And see Grand Union Equipment Co. v. Lippner, 2 Cir., 167 F. 2d 958.

4. 6 Moore's Collier, ibid., p. 3928.

5. § 2, sub. a (8) of the Bankruptcy Act, 11 U.S.C.A. § 11, sub. a (8); Milando v. Perrone, 2 Cir., 157 F.2d 1002; Mohonk Realty Corp. v. Wise Shoe Stores, 2 Cir., 111 F.2d 287; and Grand Union Equipment Co. v. Lippner, supra.

6. Cf. Wayne Gas Co. v. Owens Illinois Glass Co., 300 U.S. 131, 57 S.Ct. 382, 81 L.Ed. 557; Curtis v. O'Leary, 8 Cir., 131 F.2d 240; Standard Steel Works v. American Pipe & Steel Corp., 9 Cir., 111 F.2d 1000.

7. In any proposed order submitted pursuant to this memorandum, now that a period of more than 5 years has elapsed since the approval of the plan and the exchange could have taken place, a period of between 6 months and one year may be inserted fixing the cut-off date.

204-205 of the Chandler Act provide clear statutory authority even in the absence of a reservation of jurisdiction.

An order may be submitted embracing the rulings contained in the foregoing memorandum.