In the Matter of MERCHANTS DISTILLING CORPORATION, Debtor.

TERRE HAUTE FIRST NATIONAL BANK, Trustee, Petitioner-Appellant,

v.

UNITED STATES of America, Respondent-Appellee.

No. 12692.

United States Court of Appeals Seventh Circuit.

Dec. 2, 1959.

C. Severin Buschmann, John R. Carr, Jr., Donald A. Schabel, Indianapolis, Ind., for appellant. Buschmann, Krieg, DeVault & Alexander, Indianapolis, Ind., of counsel.

Charles K. Rice, Asst. Atty. Gen., George F. Lynch, Atty., U. S. Dept. of Justice, Washington, D. C., Don A. Tabbert, U. S. Atty., Indianapolis, Ind., Howard A. Heffron, Acting Asst. Atty. Gen., Lee A. Jackson, Alexander F. Prescott, Attys., Dept. of Justice, Washington, D. C., John C. Vandivier, Jr., Asst. U. S. Atty., Indianapolis, Ind., for appellee.

Before DUFFY, PARKINSON[1] and CASTLE, Circuit Judges.

CASTLE, Circuit Judge.

The petitioner-appellant, Terre Haute First National Bank, Trustee of Merchants Distilling Corporation in proceedings for reorganization under Chap. X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. filed a petition in the District Court for an order clarifying the provisions of the plan of reorganization of the debtor corporation, and of the Court's order approving consummation of the plan. The Trustee requested clarification so as to show that the lien of the United States of America, respondent-appellee, for excess profits taxes was discharged by the plan, and that the claim of the United States for the balance of excess profits taxes is contractual in nature and to be paid as provided in the plan.

Trustee's petition was heard by a special master on the record in the reorganization proceeding. No additional evidence was offered by either party. The special master in his report concluded that the provisions of the amended reorganization plan, which the court had approved, did not release the government's lien and that the trustee's petition should be dismissed. The District

1. While Judge PARKINSON participated in the hearing of oral arguments and a conference of the division judges above-named, he was not present at the time of, and did not participate in, the adoption of this opinion. He concurred in the result reached in this opinion.

Court overruled the trustee's exceptions to the report, concluded that the provisions of the amended plan did not release the lien and entered an order dismissing the petition. The trustee appealed.

Prior to the filing of the petition for reorganization by Merchants the Commissioner of Internal Revenue had assessed against it excess profits taxes for the years 1945 and 1946 in the sum of $779,253.84, plus interest of $486,411.34. In addition, the United States had a claim for withholding taxes, interest and penalties in the sum of $56,740.86 and excise taxes in the sum of $7,323.70. The United States had duly filed notice of tax liens against all of Merchants' properties and rights to properties.

The Trustee's amended plan of reorganization was based upon a commitment which the Trustee had obtained from Schenley Industry, Inc. The Schenley commitment set forth the conditions upon which it would purchase the common stock of Merchants upon its reorganization. It required that as of the date of closing the assets and property of Merchants be:

"subject to no liens, encumbrances or title retention or similar agreements which will not be released or discharged in the pending reorganization proceeding, except the lien for real and personal property taxes assessed in Vigo and Knox Counties, Indiana for the year 1957 due and payable in 1958".

The Schenley proposal and commitment, including the condition with respect to the release and discharge of liens, was by an amendment proposed by the trustee, included as a part of the amended plan of reorganization and incorporated therein.

The District Court in its order approving the amended plan of reorganization specifically approved the amended plan "as amended by the amendments proposed by the trustee."

The amended plan of reorganization as approved provided that Schenley would pay over to the trustee approximately $1,000,000 out of which certain payments would be made pursuant to the plan and that upon consummation thereof Merchants and its property shall be free and clear of all claims "except as otherwise provided in the plan".

The amended plan contained the following provisions altering and modifying the tax claims of the United States:

"1. The United States of America shall receive payment in cash in full of the unpaid balance of the withholding F.I.C.A. and excise taxes, together with interest at the rate of 6% per annum to date of payment and with penalties thereon as set forth in the proof of claim, and, in addition, shall receive the amount of principal and interest to date of payment due under the conditional sales contract covering the dry house, within ninety days after the date of the confirmation of the plan.

"2. The claims of the United States for excess profits taxes (including interest and penalties, if any), shall be allowed in the amount of $779,253.84 and shall be fully satisfied by payment in accordance with the following provisions:

"(a) The sum of $300,000.00 in cash will be paid to the District Director of Internal Revenue, Indianapolis, Indiana, within ninety days after the date of the confirmation of the plan.

"(b) The balance of the claim for excess profits taxes then outstanding will be liquidated by payments that may become due as the results of the carrying forward of net operating losses for years prior to the date of confirmation of the plan, in the following manner, to-wit: If by the carrying forward of the net operating losses for such prior years, the debtor becomes entitled to a reduction in taxes it would otherwise be required to pay in any particular year, the debtor is to pay to the District Director of Internal Revenue, Indianapolis, Indiana, an amount

equal to the savings of taxes so brought about, such payments to be made upon the audit and allowance as deduction of such carryforward losses by the Internal Revenue Service. Such payments shall not exceed the total amount of $479,253.84. The obligation to make payments on account of said $479,253.84 is conditioned solely upon realization of tax savings from the carryover of prior losses, as described above, and such obligation shall terminate and be deemed satisfied in full (whether paid in full or not) upon expiration of the time provided by law for the carryover of such prior losses. Notwithstanding any provision herein to the contrary the United States shall have the right, with respect to any amount accruing to the United States out of tax savings under the formula hereinabove described and remaining unpaid, to take appropriate legal steps for the collection thereof at any time within six years after allowance of the loss as a carryover deduction by the Internal Revenue Service."

The District Court's order approving consummation of the amended plan of reorganization provided:

" * * * that as of September 10, 1957, the date of consummation of the Plan of Reorganization, the debtor and its property as aforesaid were free and clear of all liens, encumbrances, claims, or interests of creditors and stockholders, except as follows:

"(a) The real and personal property taxes assessed in Vigo and Knox Counties, Indiana, for the year 1957, due and payable in 1958.

"(b) Claim of the United States of America in the amount of $479,-253.84, which represents the balance of principal of excess profits taxes to be satisfied in accordance with the terms of the Plan of Reorganization.

"(c) All claims of Schenley Industries, Inc. or Schenley Distillers, Inc. against the debtor."

Prior to the entry of the order approving consummation of the amended plan of reorganization the Secretary of the Treasury of the United States issued a certificate that by virtue of and pursuant to provisions of Section 199 of Chap. X of the Bankruptcy Act he "accepts said amended plan of reorganization" with respect to the tax claims of the United States, effective upon entry of an order of the District Court in the proceeding confirming such amended plan.

It is the Government's contention that the Secretary of the Treasury approved and accepted the compromise of the tax "claims" but did not approve a release or discharge of the existing tax "liens". It further contends that the tax liens continue until the liability is satisfied or becomes unenforceable [1] by reason of lapse of time, unless the same are released in whole or in part pursuant to statutory provisions not pertinent to the issue here involved.

Sec. 199 of Chap. X of the Bankruptcy Act (11 U.S.C.A. § 599) pursuant to which the Secretary of Treasury accepted the amended plan, provides:

"If the United States is a secured or unsecured creditor or stockholder of a debtor, the claims or stock thereof shall be deemed to be affected by a plan under this chapter, and the Secretary of the Treasury is hereby authorized to accept or reject a plan in respect of the claims or stock of the United States. If, in any proceeding under this chapter, the United States is a secured or unsecured creditor on claims for taxes or customs duties (whether or not the United States has any other interest in, or claim against the debtor, as secured or unsecured creditor or stockholder), no plan which does not provide for the payment thereof shall be confirmed by the judge except upon the acceptance of

---

1. 26 U.S.C.A. §§ 6321, 6322 and 6323.

a lesser amount by the Secretary of the Treasury certified to the court: Provided, That if the Secretary of the Treasury shall fail to accept or reject a plan for more than ninety days after receipt of written notice so to do from the court to which the plan has been proposed, accompanied by a certified copy of the plan, his consent shall be conclusively presumed."

The statute does not require that tax liens be retained and kept in force to secure any compromise made thereunder.

Section 226 of Chap. X of the Bankruptcy Act (11 U.S.C.A. § 626) provides that the property dealt with by a reorganization plan, when transferred:

"* * * shall be free and clear of all claims and *interests* of the debtor, creditors, and stockholders, except such claims and *interests* as may otherwise be provided for in the plan or in the order confirming the plan or in the order directing or authorizing the transfer or retention of such property." (Emphasis supplied.)

In the instant case it is clear that neither the provisions of the amended plan, nor of the orders confirming and approving consummation of the amended plan provide for a continuation of the tax liens of the United States. On the contrary the provisions of the Schenley commitment, which constituted a part of the amended plan of reorganization, clearly indicate that said tax liens were to be discharged in the reorganization proceeding. The obligation of Schenley to purchase the common stock of Merchants for $1,000,000 and to advance additional working capital was expressly conditioned on the discharge of the Federal Tax liens in the reorganization proceedings. The consummation of the amended plan was dependent upon such commitment and the conditions attached thereto. By virtue of the acceptance by the Secretary of Treasury of the provisions of the amended plan of reorganization with respect to the tax claims of the United States the provisions of that plan are valid and binding upon the United States in all respects. The Government's contention that the Schenley proposal and commitment was not a part of the amended plan and that its express requirement for release and discharge of liens was therefore not accepted by the Secretary of Treasury is not supported by the record.

It is our opinion that the District Court erred in approving the report of the special master insofar as it concluded that the pre-existing tax liens of the United States continue in force and effect.

We do not deem it necessary, however, to determine, at this time, whether or not the claim of the United States for the balance of excess profits taxes reserved to it under the amended reorganization plan is solely contractual in nature. Unless there is default in making a payment due under the provisions of the plan relating to the discharge of the balance of the tax liability there would appear no need to resolve that question.

The order of the District Court overruling the exceptions to the report of the special master and dismissing trustee's petition is therefore reversed and the cause is remanded with directions to enter an order clarifying the provisions of the plan of reorganization and the court's order approving consummation of said plan insofar as the discharge of the pre-existing Federal Tax liens are concerned.

Reversed and remanded with directions.