304 F.2d 351
 Thomas Maynard REID and Grace Swim Reid, Appellants,
v.
Ben M. RICHARDSON, Trustee in Bankruptcy of the consolidated estates of Thomas Maynard Reid and Grace Swim Reid, Bankrupts, Appellee.
 No. 8522.
 United States Court of Appeals Fourth Circuit.
 Argued April 5, 1962.
 Decided May 28, 1962.
 
 Stuart A. Barbour, Jr., Roanoke, Va. (T. W. Messick, Roanoke, Va., on brief), for appellants.
 Terence N. Doyle, Atty., Dept. of Justice, Minneapolis, Minn. and J. Glenwood Strickler, Roanoke, Va. (William H. Orrick, Jr., Asst. Atty. Gen., Thomas B. Mason, U. S. Atty. and Morton Hollander, Atty., Dept. of Justice, Washington, D. C., on brief), for appellee.
 Before HAYNSWORTH, BRYAN and BELL, Circuit Judges.
 J. SPENCER BELL, Circuit Judge.
 
 
 1
 This is an appeal from an order of the District Court for the Western District of Virginia in Bankruptcy, approving an order of the Referee reopening the estate in bankruptcy of Thomas Reid and consolidating it with that of his wife, Grace S. Reid.
 
 
 2
 William F. Ward, trading as Biltmore Realty Company, became a holder of a joint unsecured promissory note of Thomas and Grace Reid, husband and wife, prior to March 17, 1960. The Colonial-American National Bank also became the holder of a joint, unsecured promissory note of the Reids prior to March 17, 1960. Both of these notes waived any homestead exemption, and both were in default on March 17, 1960.
 
 
 3
 On March 17, 1960, Thomas Reid filed a voluntary petition in bankruptcy in the District Court and was adjudicated bankrupt. The petition listed as Mr. Reid's only interest in realty his interest as tenant by the entireties in the property at 1522 Fairhope Road, noting that since he held it as a tenant by the entireties with his wife, it did not accrue to the Trustee as an asset of the estate. The petition listed, among other creditors, the Colonial-American National Bank, and William F. Ward, trading as Biltmore Realty Company. The first meeting of creditors was duly set for and held on March 23, 1960. On April 3, 1960 an order of discharge was entered in Mr. Reid's proceedings, there being no objection made thereto.
 
 
 4
 On March 18, 1960, the Colonial-American National Bank assigned the Reid's defaulted note to the United States on behalf of the FHA in return for payment by the FHA of the amounts due pursuant to the Title I Insurance Program. The Referee entered an order on August 16, 1960, discharging the Trustee and closing the estate. On August 26, 1960, the United States filed its proof of claim based on the assigned note, claiming thereunder the sum of $888.30.[1] Ward filed no proof of claim against Mr. Reid's estate at this time.
 
 
 5
 On September 29, 1960, the United States commenced suit against Mrs. Reid individually on the assigned note. Nineteen days later, on October 18, 1960, Mrs. Reid filed her voluntary petition in bankruptcy. This petition was filed more than six months after the filing of Mr. Reid's petition. It listed as Mrs. Reid's only interest in realty her interest as tenant by the entireties in the property at 1522 Fairhope Road. The petition noted that she held this jointly with her husband as a tenant by the entireties and that it did not, therefore, accrue to the Trustee as an asset of the estate. The petition listed, among other creditors, the United States, as assignee of the unsecured note the Reids had given the Colonial-American National Bank. It also listed William F. Ward, trading as Biltmore Realty Company. The United States filed, on December 9, 1960, proof of claim against Mrs. Reid's estate, based on the assigned note.[2] On November 1, 1960, William F. Ward filed proof of claim against both estates based on the unsecured promissory note which he held.[3]
 
 
 6
 On January 3, 1961, the United States filed in the District Court a petition to re-open the bankruptcy estate of Thomas Reid. An ex parte order re-opening the estate was granted. Thomas Reid filed a motion to vacate the order which was overruled by the District Court. Thereafter the Referee entered an order consolidating the estates, appointing the Trustee, and directing him to sell the property at 1522 Fairhope Road. Bankrupts then filed a petition for review of this order. After a hearing, the District Court upheld the order of the Referee as correct. From this decision the bankrupts appeal.[4]
 
 
 7
 The question to be resolved is whether the Bankruptcy Court acted properly under the circumstances in exercising its general equitable power to re-open the estate of Thomas Reid, and consolidate it with that of Mrs. Reid, for the sole purpose of permitting the enforcement in the Bankruptcy Court of the joint claims against the entireties property. The Bankruptcy Act, § 2(8) (11 U.S.C.A. § 11) gives the bankruptcy courts the power to re-open estates "for cause shown".
 
 
 8
 It is too clear to admit of doubt that an estate by the entireties does not pass to the trustee in bankruptcy of one of the tenants, where by state law, entireties property is not subject to the claims of individual creditors of one of the tenants. Phillips v. Krakower, 46 F.2d 764, 765 (4 Cir. 1931); Dioguardi v. Curran, 35 F.2d 431 (4 Cir. 1929); In re Kearns, 8 F.2d 437, 47 A.L.R. 432 (4 Cir. 1925). The rule is that property interests and estates are to be dealt with in the bankruptcy courts in such manner as to give full respect to the rules of property followed in the state where the property is located. In re Kearns, supra, at 437.
 
 
 9
 It is, likewise, clear beyond peradventure that under Virginia law property held by the entireties is not subject in any manner to individual claims of creditors of one spouse, and that neither the land itself nor any interest therein may be reached in satisfaction of a separate judgment against only one of them. Vasilion v. Vasilion, 192 Va. 735, 66 S. E.2d 599 (1951). Therefore, the property at 1522 Fairhope Road did not pass to Thomas Reid's trustee in bankruptcy. He properly scheduled it as not included in his estate. Thus at the time his estate was closed, it was not an asset thereof, and the creditors were not, therefore, entitled to have it administered as such. Furthermore, it could not ever become an asset of his estate unless Mrs. Reid died within six months of the date his petition was filed. Bankruptcy Act § 70, sub. a, 11 U.S.C.A. § 110, sub. a, par. 3. This did not happen, as she has in fact outlived that six months period. Therefore, Section 70, sub. a, par. 3 of the Act can have no bearing on this case. Once that period had elapsed there was no way that the Trustee could get title to the entireties property, since it did not come within Section 70, sub. a (5) of the Act, Dioguardi v. Curran, supra.
 
 
 10
 The Court below found that a refusal to re-open Thomas Reid's estate and consolidate it with that of Mrs. Reid, "would result in precisely the same type of `legal fraud' which the court decried in * * * [Phillips v. Krakower, supra] * * *." There a holder of a joint note petitioned the Bankruptcy Court to delay the entry of the order of discharge until she could obtain a joint judgment in the state court against the bankrupt husband and the wife, who held certain property by entireties. She pointed out that under the law of Maryland, where the property was located, the discharge of the husband before she obtained a joint judgment would bar her from enforcing the joint obligation against either the non-bankrupt spouse jointly, or the entireties property. Ades v. Caplin, 132 Md. 66, 103 A. 94, L.R.A.1918D, 276 (1918). It is clear from Judge Parker's opinion that the basis for withholding the discharge is that the discharge would prevent enforcement of the joint claims against the entireties property even though this was not brought into the bankruptcy proceedings.
 
 
 11
 "The note held by Mrs. Krakower, therefore, is one upon which she is entitled to judgment which she can enforce against the property held by entireties. The discharge of Phillips in bankruptcy not only will prevent judgment being obtained against him on the note, but will prevent also, during his lifetime, the property held by entireties being subjected to the satisfaction of any judgment which may be obtained against his wife. And so, although the bankruptcy proceeding has brought no interest in the estate by entireties into court for the benefit of the creditors of Phillips, his discharge in bankruptcy will remove that entire property beyond the reach of creditors entitled to subject it to their claims.
 
 
 12
 "The question presented is whether, without giving these creditors an opportunity to proceed, the court should grant the discharge knowing that it will result in a legal fraud, i. e., the effectual withdrawing of the property from the reach of those entitled to subject it to their claims, for the beneficial ownership and possession of those who created the claims against it. We cannot conceive that any court would lend its aid to the accomplishment of a result so shocking to the conscience." 46 F.2d at 765 (Emphasis added).
 
 
 13
 On this basis our Court there said that the Bankruptcy Court acted properly, in the exercise of its equitable powers, to delay the discharge. There the injustice was plain and only the Bankruptcy Court could avoid that injustice.
 
 
 14
 The instant case is in the same position so far as the joint claim of the United States is concerned. The FHA is authorized to sue in the District Court on these notes by 28 U.S.C.A. § 1345. It is plain that Mr. Reid's discharge absolves him of legal responsibility on all of his debts both joint and several in the federal courts. Fetter v. United States, 269 F.2d 467 (6 Cir. 1959). Section 17 of the Bankruptcy Act (11 U.S.C.A. § 35) provides that "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except * * *" for those that come within six specified classifications. These exceptions are not relevant here. The Fetter case, supra, held that the effect of this provision is to release a bankrupt from both joint and several debts and to bar rendition of a joint judgment against him with his non-bankrupt wife. Therefore, after discharge, property held by them as tenants by the entireties is not subject to joint claims against husband and wife after the discharge. The reason is that execution can be had against entireties property only under a joint judgment. Vasilion v. Vasilion, supra. However, the discharge bars the entry in a federal court of such a joint judgment. Fetter v. United States, supra.
 
 
 15
 The effect of the coincidental interrelation of these rules of law is to allow the tenants by the entireties to keep the entireties property secure from the claims of their creditors even though that property was never available in bankruptcy for the satisfaction of those claims. This is a result that the Bankruptcy Act certainly did not contemplate. Under the circumstances of this case we cannot say that the Bankruptcy Court abused its discretion by re-opening Mr. Reid's estate and consolidating it with Mrs. Reid's in order to avoid this result. Neither was there any clear error in its finding that failure to re-open would result in the same kind of legal fraud objected to in Krakower.
 
 
 16
 We authorized such equitable intervention in the Krakower case in order to avoid just such an inequitable result. That case is different from the present one in only two respects; (1) there state law, rather than federal law, barred the enforcement of the joint claims against the spouses as joint obligors, (2) the equitable remedy there employed was somewhat different in nature than the one used in the present case. The first of these differences is irrelevant since in both cases the applicable law was a complete bar to enforcement. The second distinction merits some consideration since an exercise of the power to re-open an estate is a much more drastic remedy than an exercise of the power to temporarily delay a discharge.
 
 
 17
 As pointed out above, an estate may be re-opened "for cause shown". This places the matter within the sound discretion of the court, and no attempt is made to lay down rigorous outer limits of this discretion. Matter of Perlman, 116 F.2d 49 (2 Cir. 1940). Previous to the Chandler Act, the power to re-open had been restricted in use by the terms of the Act to situations in which an estate was closed before all assets were administered. Admittedly, this case would not come within this restriction since the entireties property becomes an asset of the estate only by virtue of the re-opening. However, the Chandler Amendment broadened the power of the court to re-open estates. In re United Brick & Tile Co., 94 F.Supp. 269 (D.C.Del.1950). See generally, 1 Collier, Bankruptcy (14th Ed.) par. 2.49, pp. 247, et seq.
 
 
 18
 Under all of the circumstances of this case, and particularly in view of the "legal fraud" that would occur if this estate were not re-opened, we cannot say that the Court below abused its discretion in re-opening the estate. However, we specifically note that the time of reopening of an estate is of crucial significance. Here it was only six months after the filing of the petition in bankruptcy. Under all these circumstances, re-opening within this period of time was not improper. However, it must be borne in mind that re-opening defeats one of the major purposes of the Bankruptcy Act; to stabilize an insolvent debtor's financial position at the time of the filing of the petition, to relieve him of his existing financial burdens, and to provide his then assets for the relief of his creditors. Re-opening removes the element of certainly from the adjudication and settlement of the estates. It is as essential to the creditors as it is desirable to the bankrupt that this element of certainty be destroyed only for the most compelling cause. Accordingly as the time between closing of the estate and its re-opening increases, so must also the cause for re-opening increase in weight. In the instant case the lapse of time is so short and the seriousness of the cause to re-open so great that re-opening was proper.
 
 
 19
 Since the re-opening of Thomas Reid's estate and its consolidation was proper, all outstanding present interests in the entireties property were in the custodia legis of the Bankruptcy Court. All such interests vest in the Trustee. Thus, he may convey the full quantum of the estate. Therefore, the entireties property is an asset of the consolidated estate and may be sold to satisfy the claims of all creditors holding joint obligations of the bankrupts. Roberts v. Henry V. Dick & Co., Inc., 275 F.2d 943 (4 Cir. 1960).
 
 
 20
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 This proof of claim was defective since it did not comply with General Order in Bankruptcy 21(3), 11 U.S.C.A. following section 53 in that it was not supported by an affidavit of the owner of the note at the time of the filing of the petition. No objection was made at any time to this deficiency of proof. After careful study, we conclude that this factor does not bear on the issue before us here. We have, therefore, disregarded this factor. That is not to say that it would be without significance in any later proceedings in this matter
 
 
 [2]
 These proofs of claim are also defective for the reasons mentioned above in footnote #1
 
 
 [3]
 As to the estate of Thomas Reid, this proof of claim is too late, since it is filed without the six months period from the date of the first creditors meeting. The Bankruptcy Act, § 57, sub. n, 11 U.S. C.A. § 93, sub. n requires all claims to be filed within this period
 
 
 [4]
 The United States has urged in a footnote in its brief that this Court is without jurisdiction of this appeal because the notice of appeal was from the wrong order of the Court below and that it is not timely as to the order from which the appeal should be taken. It suffices to note here that there is no prejudice to the appellees since it was plain what the bankrupts sought to have reviewed. This defeats the objection. Altvater v. Battocletti, Decided February 10, 1962, 300 F.2d 156 (4 Cir.). Cf. Hoiness v. United States, 335 U.S. 297, 69 S.Ct. 70, 93 L.Ed. 16 (1948)