In re ARCTIC ENTERPRISES, INC. (now Minstar, Inc.), Debtor.

In re ARCTIC INDUSTRIES, INC., Debtor.

In re SCORPION INDUSTRIES, INC., Debtor.

In re THE GET AWAY, INC., Debtor.

In re ARCTIC RECREATIONAL PRODUCTS, INC., Debtor.

In re ARCTIC SPORTS PRODUCTS, LTD., Debtor.

In re ARCTIC INTERNATIONAL SALES CORPORATION, Debtor.

In re ARCTIC MARINE, INC., Debtor.

In re ARCTIC MARINE PRODUCTS, INC., Debtor.

In re ARCTIC LUND, INC., Debtors.

Bankruptcy Nos. 3–81–00280 to 3–81–00283, 3–81–00286, 3–81–00287, 3–81–00354, 3–81–00284, 3–81–00285 and 3–81–00288.

United States Bankruptcy Court, D. Minnesota.

Dec. 29, 1983.

Stephen H. Cohen and Howard A. Patrick, Minneapolis, Minn., for Manufacturers Hanover Trust Co. ("MHTC").

Richard D. Holper, St. Paul, Minn., for First Bank of St. Paul.

James L. Baillie, Minneapolis, Minn., for Committee of Equity Sec. Holders supporting the debtors' motion.

Melvin I. Orenstein, Minneapolis, Minn., and Donald C. Swenson, Thief River Falls, Minn., for debtors.

JOHN J. CONNELLY, Bankruptcy Judge.

This matter came before the Court on November 29, 1983 and December 8, 1983 on the debtors' motion for an order interpreting and clarifying certain provisions of the plan of reorganization (the "Plan") which was confirmed December 4, 1981. The sole question is whether the "antidilution" provision relating to Class B stock owned by the lenders terminated on repayment of the debt.

Now, based upon the file of the case, memoranda, exhibits, and arguments of counsel, the Court makes the following Order pursuant to Bankruptcy Rule 7052.

I.

It is incumbent on the Court to first address MHTC's objection to the Court'. jurisdiction over this matter. MHTC contends that the Plan and the Articles of Incorporation provided for therein created an entirely new contract between the parties, and that the sole question here is one of interpreting a contract which is wholly unconnected to the reorganization proceeding had in this Court. This is not the correct view of the effect of a confirmed plan. The question raised by the debtors' motion is essentially one of determining what, under the correct interpretation of the plan, are the present rights of the parties. Such a question is clearly within the jurisdiction of this Court which has the power to interpret its own orders and decrees in aid of their proper execution. See, e.g., *In re Merchants Distilling Corp.,* 272 F.2d 80 (7th Cir.1959); *In re United Brick & Tile Co.,* 94 F.Supp. 269 (Del.1950); *In re United Bancroft Hotel Co.,* 86 F.Supp. 690 (Mass.1949); *Shores v. Hendy Realiza-*

*tion Co.,* 133 F.2d 738 (9th Cir.1943); and *In re Flatbush Ave. Nevins St. Corp.,* 133 F.2d 760 (2nd Cir.1943).

The debtors' motion deals with the interpretation and inter-relationship of two provisions. The Amended Joint Plan of Reorganization (the "Plan") provides in Section VII, Paragraph 4(a), Page 20:

> "The Lenders' stockholder interest shall not be subject to dilution, except to the extent that may be permitted in the additional and controlling loan, credit or other agreements between Lenders and Boat Companies, *for so long as Lenders retain such stock or for so long as any loans pursuant to such additional and controlling loan, credit or other agreements remain unpaid, whichever event occurs earlier,* unless all Lenders consent thereto." (emphasis supplied).

Section XI of the Plan, which deals with the means for execution of the plan, Paragraph 4, Page 36 originally read:

> [Arctic] shall take such action as may be necessary to issue Lenders common stock of Arctic Enterprises, Inc. in accordance with the terms of the Plan.

Shortly before confirmation, the debtors sought to modify that language to read:

> So long as any shares of Class B Shares are outstanding and have not been converted into Class A Shares either by the holder of said Class B Shares or by the lapse of time, [Arctic] *shall not, without the consent of each holder of Class B* Shares issue or sell shares of its Capital Stock . . . or in any manner grant . . . any rights to subscribe for or to purchase . . . Capital Stock, or any Stock or securities convertible into or exchangeable for Capital Stock . . . *or take any other action whatsoever that would reduce or diminish the proportionate percentage of ownership held by such holder of Class B Shares [Arctic].* (Emphasis added.)

The Court approved the proposed modification on counsel's representation such modification was not major and did not affect the rights of other creditors or equity security holders. (Court Order of Judge Jacob Dim, December 4, 1981, Paragraph 2).

On October 11, 1983, MHTC was repaid. On November 16, 1983, the Board of Directors of the debtor (now "Minstar") voted to authorize issuance of public debt securities with detachable stock warrants. MHTC asserts that by virtue of the amendment to the articles of incorporation in the execution section of the plan, the debtor must obtain its consent before Minstar can issue any public debt with detachable warrants. MHTC will not consent. The debtor has brought a motion to clarify and interpret the two conflicting provisions.

## II

There is clearly an inconsistency between the two provisions. The substantive portion of the plan limits the lenders' antidilution protection to the earlier of repayment of the Boat Company loan or the lender no longer holding the stock. The amended articles of incorporation, which are part of the execution provisions of the plan, contain no such limitation.

The plan which was voted on and accepted by all the creditors (except the lenders) contained only the provision which limited the antidilution rights. The amended articles of incorporation which do not contain the limitation were amended *after* the vote by all the other creditors and were never submitted for a re-vote because of counsel's representations no substantive changes had been made. Under these circumstances, it is clear the limiting provision is controlling and MHTC's antidilution protection was terminated on October 11, 1983 when it was repaid.

First, the Court views the Plan as a whole. The provision without the antidilution limitation was in the "means of execution" section of the Plan which was not the definitive source of the rights of the parties but merely the means of implementing the previous provisions which specifically defined the rights and obligations of the parties. The inclusion of the more specific limiting language in the substantive portion of the Plan is controlling over the more general implementation provision in this Court's opinion.

Also in reviewing the Plan, the Court finds that to follow MHTC's absolute anti-dilution interpretation would be extremely unfair to the approximately four thousand other stockholders. All those stockholders voted for a plan which limited the antidilution rights of the lenders. To give MHTC such an absolute veto power on further stock issuance is a very substantive change to the plan which clearly changes the positions of the other stockholders without their consent. Both MHTC and the debtor represented to the Court at the time of confirmation that the amendments did not propose substantive changes which would require submission to the creditors for another vote. None of the parties intended the amendment to affect substantive rights. Therefore, it is clear the lenders antidilution rights are limited by the provisions in Section VII of the Plan.

ACCORDINGLY, IT IS ORDERED:

1. Debtor's motion for an order interpreting and clarifying the provisions of its amended joint plan of reorganization is granted.

2. Manufacturers Hanover Trust Company antidilution rights were terminated upon the payment by the Boat Companies of their obligations to the lenders on October 11, 1983.

3. The Plan is modified and amended as follows to clarify the provisions in question:

A) Article XI, Paragraph 4 of the Plan is hereby amended in the following respects. First, Article VII, Section B, Paragraph 8 of the Company's Restated Articles of Incorporation shall be amended to read:

"8. So long as any shares of Class B Shares are outstanding and have not been converted into Class A Shares either by the holder of said Class B Shares or by the lapse of time, or until the obligations of the Boat Companies to the Lenders as provided for and as each term is defined in that certain Amended Joint Plan of Reorganization confirmed by an Order of the United States Bankruptcy Court, District of Minnesota, Third Division, dated December 4, 1981, are paid and satisfied, whichever event occurs earlier, the cor-poration shall not, without the consent of each holder of Class B Shares, issue or sell any shares of its Capital Stock (including either Preferred Stock or Common Stock) or in any manner grant (whether directly or by assumption in a merger or otherwise) any rights to subscribe for or to purchase, or any options for the purchase of, Capital Stock, or any stock or securities convertible into or exchangeable for Capital Stock, whether or not the rights to exchange or convert thereunder are immediately exerciseable, or declare any dividend, other than a regular cash dividend, or make any other distribution upon any stock of the corporation payable in stock, or the right to receive Stock, or issue any shares of its capital stock in any merger, consolidation or other reorganization involving the corporation, or subdivide, split up or reclassify or combine its Capital Stock, or take any other action whatsoever that would reduce or diminish the proportionate percentage of ownership held by such holder of Class B Shares in the corporation."

B) Article VII, Section B, Paragraph 11 of the Company's Restated Articles of Incorporation shall be amended to read:

"11. The Board of Directors, without action by the shareholders, shall have authority to offer for subscription, to accept and reject subscriptions for, to sell or otherwise dispose of, to allot, and to issue, from time to time, any of the Class A Shares not then issued or which may have been issued and reacquired as treasury stock by the corporation, for such consideration upon such other terms, provisions and conditions as the Board of Directors may determine.

The Board of Directors, without action by the shareholders, shall have authority to issue, sell or grant, from time to time, rights to purchase or subscribe for Class A Shares or both and determine if such rights may be attached to or issued with Class A Shares. The Board of Directors, without action by the shareholders, shall have the author-

ity to designate the form of share purchase or subscription warrants or other evidences of such option rights and to set and fix all terms, provisions and conditions thereof, including without limitation, purchase and subscription prices. All of the powers set forth in this Paragraph 11 shall be subject to these Restated Articles of Incorporation, as amended, and the rights, preferences and limitations in favor of the holders of the Class B Shares."

In all other respects, Article XI, Paragraph 4 of the Plan of Reorganization shall remain in full force and effect.

4. That the Order Confirming Plan herein dated December 4, 1981 and the Order in Aid of Consummation of Plan of Reorganization With Respect to Arctic Enterprises, Inc., dated December 4, 1981, and the Modification approved by the Court on December 4, 1981, are hereby corrected and amended to conform to the Amendments set forth in the preceding paragraph hereof.

5. That the President and Secretary of Debtor Minstar, Inc. are hereby authorized and directed to execute and file with the Secretary of State of the State of Minnesota a Certificate of Amendment to the Restated Articles of Incorporation of Minstar, Inc., containing the corrected and reformed provisions of the Order Confirming the Plan of Reorganization and directing the Secretary of State of the State of Minnesota to accept for filing said Certificate of Amendment and to record the same in accordance with the provisions of the Minnesota Statutes § 301.37 (or § 302A.151 if filed after January 1, 1984) with said Certificate of Amendment to be effective upon such filing.