In re Earnest Raymond TYLER, Debtor.

Bankruptcy No. 81–01163–R.

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

Jan. 20, 1983.

Larry D. Catlett, Richmond, Va., for debtor.

Keith L. Phillips, Robert D. Perrow, Richmond, Va., for Central Fidelity Bank.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter comes on upon the filing by Central Fidelity Bank, N.A., (CFB) of an application to reopen the estate of Earnest Raymond Tyler, the debtor herein, for the purpose of administering unadministered assets. After hearing and upon submission of briefs, this Court makes the following determination.

## STATEMENT OF THE FACTS

Earnest Tyler filed a Chapter 7 petition in bankruptcy with this Court on July 8, 1981, in which he listed CFB as a creditor. At the time he filed his petition in bankruptcy he and Mabel H. Tyler, his wife, were liable to CFB for the unpaid balance of two promissory notes. Earnest Tyler listed these notes as unsecured claims; the first note in the amount of $11,000.00 and the second note in the amount of $1,000.00.

At the time Earnest Tyler filed his petition in bankruptcy he owned, with his wife, as tenants by the entirety, real property located in Hanover County, Virginia, with an estimated market value of $31,000.00. Tyler noted in his bankruptcy schedules that the Farmer's Home Administration had a first deed of trust in the amount of $17,000.00 secured by the real estate, thereby leaving an equity in the property of $14,000.00. Tyler claimed his interest in this property exempt pursuant to 11 U.S.C. § 522(b)(2)(B).

This Court granted Tyler his discharge in bankruptcy on October 6, 1981. William C. Parkinson, Jr., the trustee herein, reported that this was a no asset estate and the Court closed the case on February 26, 1982. Shortly thereafter, on March 26, 1982, CFB filed a motion for judgment in the Circuit Court of Henrico County, Virginia, against Mabel H. Tyler to recover the unpaid balance of the notes. Mabel Tyler did not respond to that suit and the Circuit Court scheduled a default judgment hearing on the motion for judgment to be held on September 3, 1982. On September 2, 1982, Mabel Tyler filed a Chapter 7 petition in bankruptcy with this Court in which she also listed debts owing CFB and in which she also claimed her interest in the Hanover County property exempt pursuant to 11 U.S.C. § 522(b)(2)(B). This Court granted Mabel Tyler her discharge in bankruptcy on December 21, 1982. Her case has not yet been closed. CFB filed its application to reopen Earnest Tyler's bankruptcy estate on September 21, 1982.

## CONCLUSIONS OF LAW

CFB now asks this Court to reopen the estate of Earnest Tyler and to consolidate his case with the pending case filed by Mabel H. Tyler, in order that the property they claimed exempt pursuant to 11 U.S.C. § 522(b)(2)(B) may be liquidated and made available for the payment of claims representing the joint obligations of both debtors.[1] This Court has the authority to reopen a bankruptcy case to administer assets of the debtor.[2]

Although requests to reopen estates lie within the sound discretion of the bankruptcy court, the court may not abuse its discretion by refusing to modify one of its orders which may result in a legal fraud upon a debtor's creditors. *In re Seats,* 537 F.2d 1176, 1177–1179 (4th Cir.1976). "There is an overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction." *Seats* at 1178 citing *Bank of Marin v. England,* 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966).[3]

The facts of the instant case are remarkably similar to those found in *Reid v. Richardson,* 304 F.2d 351 (4th Cir.1962) and this Court concludes *Reid* is dispositive of the issues herein. In *Reid* the Fourth Circuit affirmed a referee's order reopening the estate in bankruptcy of Thomas Reid and consolidating it with the estate in bankruptcy of Grace Reid, his wife. Thomas Reid

filed his bankruptcy petition approximately six months before his wife filed her petition. He noted in his petition that he owned certain real property with his wife as tenants by the entirety and that, because he held the property with his wife as tenants by the entirety, the property did not accrue to the trustee as an asset of the estate.[4] After the bankruptcy court entered Thomas Reid's discharge, a creditor which held a joint unsecured promissory note filed suit against Grace Reid individually on the note. Nineteen days later, Grace Reid filed her petition in bankruptcy. Shortly thereafter, the referee entered an order reopening the bankruptcy estate of Thomas Reid, consolidating the two bankruptcy estates, appointing the trustee, and directing the trustee to sell the real property the debtors owned as tenants by the entirety. The Fourth Circuit held that the bankruptcy court acted properly in reopening Thomas Reid's estate and consolidating it with that of Grace Reid "... for the sole purpose of permitting the enforcement in the Bankruptcy Court of the joint claims against the entireties property." *Reid* at 353. In reaching its decision, the *Reid* court relied heavily on *Phillips v. Krakower,* 46 F.2d 764 (4th Cir.1931).[5]

In *Phillips,* the court delayed granting the bankrupt his discharge in bankruptcy in order to give one of the bankrupt's creditors the opportunity to obtain a judgment on a

1. 11 U.S.C. § 522(b)(2)(B) provides that a debtor may exempt from property of the estate his interest in tenants by the entirety property which is immune from process under state law. In Virginia, tenants by the entirety property is immune from the claims of individual creditors. *Vasilion v. Vasilion,* 192 Va. 735, 66 S.E.2d 599, 602 (1950).

2. 11 U.S.C. § 350(b) provides "[a] case may be reopened in the court in which such case is closed to administer assets, to accord relief to the debtor, or for other cause." See also, Rule 515 of the Rules of Bankruptcy Procedure.

3. In *Seats,* the Fourth Circuit held that the bankruptcy court abused its discretion when it denied a creditor's motion to reopen an estate and modify its discharge order for the purpose of permitting the creditor to pursue its claim against the bankrupt and his wife and enforce it against their tenants by the entirety property.

4. Prior to the 1978 Bankruptcy Reform Act, when only one spouse filed a petition, tenants by the entirety property remained outside of the bankruptcy estate. 11 U.S.C. § 541(a) provides that all legal or equitable interests of the debtor become property of the estate.

5. Although decided prior to the enactment of the 1978 Bankruptcy Reform Act, *Krakower* aptly reflects the ultimate effect of the Code on tenants by the entirety property. *In re Ford,* 3 B.R. 559, 576 (Bkrtcy.D.Md.1980) *aff'd sub. nom. Greenblatt v. Ford,* 638 F.2d 14 (4th Cir. 1981). See also, *In re Martin,* 20 B.R. 374, 376 (Bkrtcy.E.D.Va.1982). The law enunciated in *Phillips* concerning the effect on tenants by the entirety property is valid for such property held in Virginia. *Davison v. Virginia National Bank,* 493 F.2d 1220, 1222 (4th Cir.1974).

note executed by the bankrupt and his non-bankrupt wife and enforce that judgment against the property they held as tenants by the entirety. The Fourth Circuit noted that the bankrupt's discharge would prevent a joint creditor of the bankrupt and his wife from obtaining judgment against the bankrupt on a note they had both executed and would prevent property which the bankrupt and his wife held as tenants by the entirety from being subjected to the satisfaction of any judgment obtained against the bankrupt's wife. *Phillips* at 765. Because his discharge would have removed the tenants by the entirety property from the reach of their joint creditors who had not previously obtained joint judgments, the court concluded the granting of the bankrupt's discharge without a delay for the benefit of the plaintiff, a joint creditor, to reduce its note to judgment would have resulted in a "legal fraud". *Id.*

The *Reid* court based its decision on the reasoning found in *Phillips* and permitted the reopening of the husband's estate. Although the *Reid* court realized the reopening of an estate was a more drastic remedy than the temporary delay of a discharge, it found the six month delay to be negligible.

"However, we specifically note that the time of reopening of an estate is of crucial significance. Here it was only six months after the filing of the petition in bankruptcy. Under all these circumstances, re-opening within this period of time was not improper. However, it must be borne in mind that re-opening defeats one of the major purposes of the Bankruptcy Act; to stabilize an insolvent debtor's financial position at the time of the filing of the petition, to relieve him of his existing financial burdens, and to provide his then assets for the relief of his creditors. Re-opening removes the element of certainty from the adjudication and settlement of the estates. It is as essential to the creditors as it is desirable to the bankrupt that this element of certainty be destroyed only for the most compelling cause. Accordingly as the time between closing of the estate and its re-opening increases, so must also the cause for re-opening increase in weight. In the instant case the lapse of time is so short and the seriousness of the cause to re-open so great that re-opening was proper."

*Reid* at 355.

 The seriousness of the cause to reopen in the instant case is equally as great as that found in the *Reid* case. The facts are almost identical in each case. The sole difference is the larger gap between the filing of the two petitions in the instant case. Fourteen months elapsed between the filing of the two petitions and eleven months elapsed between Earnest Tyler's discharge and Mabel Tyler's filing her petition in bankruptcy. Reviewing the efforts of CFB to reduce its note to judgment and the debtors' efforts to thwart that attempt and considering that the *Reid* court found a six month gap to be a very short period, this Court concludes it ought to use its equitable discretion to reopen the debtor's case and consolidate it with his wife's case. Upon the reopening of Earnest Tyler's bankruptcy case and the consolidation of his case with his wife's case, the U.S. Trustee should promptly appoint a trustee for the purpose of administering the debtors' property which they claimed exempt pursuant to 11 U.S.C. § 522(b)(2)(B). Any proceeds from the sale of this property should be available only to satisfy the joint obligations of the debtors.

 Courts should weigh several factors in determining whether sufficient cause exists to reopen a bankruptcy case. The most important factor is whether the length of time between the discharge and the reopening of the case provides a basis for the defense of laches. As discussed above, the eleven month gap between Earnest Tyler's discharge in bankruptcy and CFB's motion to reopen is an insufficient base for the defense of laches in light of the facts of the case. Second, the Court should determine whether the party seeking the reopening was dilatory in failing to ask for relief from the automatic stay and a stay of discharge in order to reduce his joint obligation to a

joint judgment as was done in the *Krakower* case. In neither *Reid* nor *Seats* did the Fourth Circuit hold that the plaintiff's lack of diligence prejudiced its claim.[6] Third, the Court should consider whether the debtor's tenants by the entirety property has been substantially improved since the first spouse received his discharge in bankruptcy. If the debtor has made substantial payments on a debt secured by the debtors' tenants by the entirety property or if the property has increased in value, the Court should decline to reopen the case. *In re Shaw,* 5 B.R. 107, 111 (Bkrtcy.M.D.Tenn. 1980). In the instant case, however, both debtors stated in their bankruptcy schedules that the Farmer's Home Administration had a first deed of trust in the amount of $17,000.00 secured by their real estate, and thereby had equity in the property of $14,000.00. The debtors did not claim their equity in the property or the value of the property increased during the period between the filing of their bankruptcy petitions.

When couples file joint bankruptcy petitions, the trustee obtains their full interest in their tenants by the entirety estates. *In re Ragsdale,* 9 B.R. 991, 993 (E.D. Va.1981) *aff'd sub nom. Ragsdale v. Genesco,* 674 F.2d 277 (4th Cir.1982). When one spouse files a petition in bankruptcy shortly after the discharge of the other spouse, Courts upon appropriate motion should reopen the first spouse's case for the purpose of combining that interest in the property with the other spouses' interest. Just as joint filing debtors may not retain entirety property which may be used to satisfy claims of joint creditors, likewise spouses who file separate petitions within a reasonably close period of time should not have any legitimate expectation of retaining such property. *See generally,* Note, *Estates by the Entirety in Bankruptcy,* 15 *J. of Law Ref.,* 399 (1982).

The debtors will be allowed to retain any equity in their real estate which they claimed exempt pursuant to their homestead deed and *Va.Code Ann.* § 34–4.

An appropriate Order will issue.

---

**6.** Note also that at the time Earnest Tyler's case was closed the question whether a creditor could obtain a stay of discharge for the purpose of reducing a claim against a debtor and his spouse to judgment was undetermined in this Court. That question was not settled until May 12, 1982 when this Court issued its opinion in *Martin.*