In re Randall Paul PENLAND, a/k/a Penland Photography, Debtor.

In re Dona Gail PENLAND, Debtor.

Thomas H. DICKENSON, Trustee for the Estate of Randall Paul Penland, and Leon Steinberg, Trustee For the Estate of Dona Gail Penland, Plaintiffs,

v.

Randall Paul PENLAND; Dona ˙ Gail Penland; and Lumbermen's Investment Corporation, Defendants.

Bankruptcy Nos. 3–82–00426, 3–82–01286. Adv. No. 3–83–0001.

United States Bankruptcy Court, E.D. Tennessee.

Nov. 7, 1983.

Thomas H. Dickenson, Knoxville, Tenn., for plaintiffs.

Stephen C. Zachary, Knoxville, Tenn., for defendants Randall and Dona Penland.

Child, O'Connor & Petty, Charles H. Child, Knoxville, Tenn., for defendant Lumbermen's Inv. Corp.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

At issue is the right, pursuant to 11 U.S. C.A. § 363 (1979), of the co-plaintiffs, two trustees in bankruptcy, to jointly sell a lot and residence owned as tenants by the entirety by the debtors, husband and wife, whose chapter 7 petitions were filed approximately five months apart. The determinative issues pertain to the reopening of the husband's estate, pursuant to 11 U.S. C.A. § 350 (1979), and the timeliness of his trustee's objection to his homestead exemption claim against the entireties property. The trustees' rights to certain rental proceeds from the property in question are also at issue.

### I

The facts have been stipulated. Randall and Dona Penland, husband and wife, were married at all times relevant herein. On March 26, 1982, Mr. Penland filed a voluntary chapter 7 bankruptcy petition. Among his scheduled assets he listed a house and lot, jointly owned as a tenant by the entirety with his wife, in Sevierville, Tennessee. Pursuant to Tenn.Code Ann. § 26–2–301 (1980),[1] he claimed a homestead exemption in the amount of $5,000.00 against the house and lot. At the Code § 341 meeting of creditors Mr. Penland disclosed that the disputed property was not his principal place of residence. Hence, he was not entitled to an exemption against the property under Tenn.Code Ann. § 26–2–301 (1980). However, the trustee in his case, Thomas H. Dickenson, did not object to the exemption claim because he did not believe that Mr. Penland's interest in the entireties property, which is mortgaged, was of any consequential value to the estate. A "Trustee's Report of No Distribution" was filed by Dickenson on May 25, 1982; the discharge order in Mr. Penland's case was entered on June 30, 1982; an order approving the trustee's report and closing Mr. Penland's estate was entered on July 14, 1982.

On August 30, 1982, five months after the filing of her husband's chapter 7 petition, Mrs. Penland filed her chapter 7 bankruptcy petition. She also scheduled the disputed entireties property among her assets and likewise claimed a $5,000.00 homestead exemption, pursuant to Tenn.Code Ann. § 26–2–301 (1980). An agreed order withdraw-

---

1. This statute enacts in material part: "(a) An individual, regardless of whether he is head of a family, shall be entitled to a homestead exemption upon real property which is owned by the individual and used by him, his spouse, or a dependent, as a principal place of residence. The aggregate value of such homestead exemption shall not exceed five thousand dollars ($5,000)."

ing her homestead exemption claim was entered on November 10, 1982, after her trustee in bankruptcy, Leon Steinberg, interposed an objection on the basis that the property claimed as exempt was neither her principal residence nor that of her spouse.

On November 23, 1983, eleven days after learning of Mrs. Penland's bankruptcy proceeding, Dickenson filed both an application to reopen Mr. Penland's bankruptcy case and an objection to his homestead exemption claim. An order reopening Mr. Penland's estate pursuant to 11 U.S.C.A. § 350(b) (1979) was entered on November 26, 1982.

Dickenson and Steinberg, co-plaintiff trustees, filed a complaint on January 3, 1983, requesting authority to sell the controverted house and lot pursuant to 11 U.S. C.A. § 363 (1979).[2] Defendant Lumbermen's Investment Corporation has a duly perfected first mortgage against the property; the unpaid mortgage indebtedness was $33,190.53 as of April 30, 1983. Although the fair market value of the house and lot is not stipulated, it exceeds $38,-190.53, the sum of the mortgage indebtedness plus Mr. Penland's claimed $5,000.00 homestead exemption.

With the exception of four of Mr. Penland's debts, totaling approximately $12,-000.00, the unsecured debts in the debtors' respective schedules are identical. Some forty-five unsecured creditors are scheduled by Mr. Penland.

## II

■ Section 350 of Title 11 of the United States Code enacts:

(a) After an estate is fully administered and the court has discharged the trustee, the court shall close the case.

(b) A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.

The debtors contend there is no compelling reason to reopen Mr. Penland's bankruptcy case.[3] They assert that their separate filings in bankruptcy are a consequence of their belief it would never be necessary for Mrs. Penland to seek relief through bankruptcy. Their mistaken belief was based upon the advice of two attorneys who told them that the likelihood of legal action by creditors against Mrs. Penland, a housewife, was slight.

Although neither fraud nor subterfuge on the debtors' part is alleged, plaintiffs contend the debtors will be able to preserve an asset, through their separate filings, which should be available to creditors if the court denies them authority to sell the fee interest in the disputed entireties property. According to plaintiffs, the property is not necessary to assure the debtors' "fresh start" since it is not their residence.

The facts in *Reid v. Richardson,* 304 F.2d 351 (4th Cir.1962) are substantially similar to those in the instant case. In *Reid* the husband filed his individual bankruptcy petition on March 17, 1960. His interest as a tenant by the entirety with his wife in a residence was the only real property interest scheduled in his petition. Under the then effective provisions of the Bankruptcy Act of 1898, Mr. Reid's tenancy by the entirety interest was not an asset of his bankruptcy estate.[4] Mr. Reid received his general discharge on April 3, 1960; his bankruptcy estate was closed on August 16,

---

2. Subsection (b) of this provision states: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."

3. Mr. Penland's attorney filed a motion on December 30, 1982, requesting the court to vacate its order of November 26, 1982, reopening his client's case. He represented in this motion that he had not received notice of the trustee's motion to reopen; that no assets had been concealed from the trustee; and that no cause existed for reopening the case. On January 5, 1983, the court entered an order denying this motion since the reopening did not determine any substantive right of any party. Further, neither 11 U.S.C.A. § 350(b) (1979) nor former Bankruptcy Rule 515 require that notice be given to either a debtor or his attorney.

4. See 11 U.S.C.A. § 110 (1953) (repealed 1978).

1960. Only two months later, on October 18, 1960, Mrs. Reid filed her own bankruptcy petition, listing the same residence previously scheduled by her husband as the only real property in which she had an ownership interest. Because her interest was limited to that of a tenant by the entirety, the residence was likewise not an asset of her estate. Mr. Reid's bankruptcy case was reopened upon a petition filed on January 3, 1961, by the holder of an unsecured note jointly executed by the Reids. A motion by Mr. Reid to vacate the order reopening his bankruptcy case was overruled. The referee in bankruptcy entered an order consolidating the estates; the order also appointed a trustee and directed him to sell the Reids' entireties property. (The Reids appealed the district court decision affirming the referee's order.)

Observing that Mr. Reid's discharge relieved him from legal responsibility on the jointly executed note and that execution against entireties property in Virginia was available only to a joint judgment creditor, the court of appeals stated:

> Under all of the circumstances of this case, and particularly in view of the "legal fraud" that would occur if this estate were not reopened, we cannot say that the Court below abused its discretion in re-opening the estate. However, we specifically note that the time of re-opening of an estate is of crucial significance. Here it was only six months after the filing of the petition in bankruptcy. Under all these circumstances, re-opening within this period of time was not improper. However, it must be borne in mind that re-opening defeats one of the major purposes of the Bankruptcy Act; to stabilize an insolvent debtor's financial position at the time of the filing of the petition, to relieve him of his existing financial burdens, and to provide his then assets for the relief of his creditors. Reopening removes the element of certainty from the adjudication and settlement of the estates. It is as essential to the creditors as it is desirable to the bankrupt that this element of certainty be destroyed only for the most compelling cause. Accordingly as the time between closing of the estate and its re-opening increases, so must also the cause for re-opening increase in weight. In the instant case the lapse of time is so short and the seriousness of the cause to re-open so great that reopening was proper.

*Reid,* 304 F.2d at 355.

The court of appeals thus concluded that the residence held as tenants by the entireties should be sold by the trustee to satisfy the claims of the bankrupts' mutual creditors.[5]

In a recent decision *In re Tyler,* 27 B.R. 289 (Bkrtcy.E.D.Va.1983), also involving facts quite similar to those herein, Judge Shelley followed the holding in *Reid,* citing three factors to consider in determining whether sufficient cause exists to reopen a case: (1) the period of time between the debtor's discharge and the reopening of the case; (2) whether the party requesting reopening has been dilatory in attempt to reduce his claim to a joint judgment; and (3) whether the value of the entireties property has been enhanced through substantial improvements since the first spouse was discharged in bankruptcy.[6] *Tyler,* 27 B.R.

---

**5.** *See also Matter of Seats,* 537 F.2d 1176 (4th Cir.1976) wherein an untimely objection to the bankrupt husband's general discharge was treated as a motion to reopen his estate. Noting its assumption that the bankruptcy discharge of one spouse from liability on a jointly executed note precluded enforcement of a judgment against the other spouse through execution against entireties property during the lifetime of the discharged spouse, the court of appeals directed reopening of the bankrupt's case. Reopening was necessary to modify the discharge order to permit a creditor to pursue its claim to judgment against the bankrupt and his wife, enabling the creditor to reach any property owned by the bankrupt and his wife as tenants by the entirety.

**6.** See *In re Shaw,* 5 B.R. 107 (Bkrtcy.M.D.Tenn. 1980) (right of survivorship was insufficient interest in entireties property to permit bankruptcy trustee to sell the fee interest). The trustee in *Shaw,* hoping to consolidate the two estates and to sell the marital residence owned as tenants by the entirety as an asset of the consolidated estates, initially sought to reopen the case of the debtor's husband. The court declined to reopen the husband's case because

at 292–93. Although the debtors' petitions in *Tyler* were filed fourteen months apart and nearly twelve months elapsed between the date of Mr. Tyler's discharge and the motion to reopen his case, Judge Shelley determined it was appropriate, through the exercise of the court's equitable discretion, to reopen Mr. Tyler's case and to consolidate it with his wife's. The penultimate paragraph of the opinion recites:

▪ When couples file joint bankruptcy petitions, the trustee obtains their full interest in their tenants by the entirety estates. *In re Ragsdale,* 9 B.R. 991, 993 ([Bkrtcy.] E.D.Va.1981) aff'd sub nom. *Ragsdale v. Genesco,* 674 F.2d 277 (4th Cir.1982). When one spouse files a petition in bankruptcy shortly after the discharge of the other spouse, Courts upon appropriate motion should reopen the first spouse's case for the purpose of combining that interest in the property with the other spouses' (sic) interest. Just as joint filing debtors may not retain entirety property which may be used to satisfy claims of joint creditors, likewise spouses who file separate petitions within a reasonably close period of time should not have any legitimate expectation of retaining such property. *See generally,* Note, *Estates by the Entirety in Bankruptcy,* 15 J. of Law Ref., 399 (1982).

*Tyler,* 27 B.R. at 293.[7]

▪ In the instant case Mrs. Penland's bankruptcy petition was filed less than seven weeks after the closing of her husband's estate. Mr. Penland's trustee diligently filed a motion to reopen, doing so within eleven days of learning of Mrs. Penland's bankruptcy proceeding. Mr. Penland's case was reopened less than five months after both the entry of his discharge and the closing of his estate. There is no record of any improvement of the controverted property or detrimental reliance upon his discharge by Mr. Penland. Hence, his rights are not prejudiced as a consequence of the reopening of his bankruptcy estate—for which cause does exist—to permit the plaintiff trustees to jointly sell the debtors' ownership interest in the controverted entireties property pursuant to Code § 363. This court thus concurs with the *Reid* and *Tyler* decisions in declining to permit individual debtors to insulate nonexempt entireties property from the claims of creditors by means of filing two separate bankruptcy petitions, the second petition being filed proximately to the closing of the first case.

III

▪ The question remains whether plaintiff Dickenson timely objected to Mr. Penland's homestead exemption claim. As a general rule homestead rights are determinable on the filing date. *Mansell v. Carroll,* 379 F.2d 682 (10th Cir.1967). Admittedly, the property in issue was not Mr. Penland's principal residence on the filing date of his petition.[8] He nonetheless claimed a homestead exemption in his former residence. However, Dickenson did not object to this exemption claim until November 23, 1982, filing his objection concurrently with his motion to reopen.

Bankruptcy Code § 522(*l*) enacts in relevant part:

The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this "section...." Unless a party in interest objects, the property claimed as exempt on such list is exempt.

---

four years had elapsed between the filing of the two petitions, substantial improvements had been made to the property, the husband had relied upon the previous abandonment of his trustee's interest in reaffirming at least one debt, and the only creditor which would benefit from reopening had not been diligent in protecting its rights.

**7.** Compare *In re Podgorski,* 18 B.R. 889 (Bkrtcy.N.D.Ind.1982) wherein a motion to reopen a husband's bankruptcy estate to enable joint creditors of the debtors to reach the debtors' nonexempt equity in their marital residence was denied. Nearly nineteen months had elapsed between the two filing dates, and the motion to reopen came ten months after closure of the husband's case.

**8.** He had moved therefrom on March 15, 1982, only eleven days preceding the filing of his bankruptcy petition.

The statute does not prescribe a time limit for filing objections to a debtor's claim of exemptions. Former Bankruptcy Rule 403 also does not control; it is inapposite since it is inconsistent with the provisions of the Code. *Matter of Cipa*, 11 B.R. 968 (Bkrtcy. W.D.Pa.1981). Furthermore, no interim nor local rule fixed the time for filing objections.[9] However, the court's order for meeting of creditors in Mr. Penland's case recites: "Unless the court extends the time, any objection to the debtor's claim of exempt property ... must be filed within 15 days after the above date [April 29, 1982] set for the meeting of creditors."

The debtors contend it was incumbent upon Dickenson, or other parties in interest, to object within the time prescribed in the court's order, absent deception or fraud. They further maintain that neither deceit nor fraud is an issue because the trustee was informed that the property against which Mr. Penland asserted his homestead exemption was not his principal residence. Plaintiffs respond by asserting that no purpose would have been served in objecting to Mr. Penland's homestead exemption claim, his survivorship interest in the property having an inconsequential value to the estate, previous to the filing of Mrs. Penland's petition and the reopening of his case.

In *Ragsdale v. Genesco, Inc.*, 674 F.2d 277 (4th Cir.1982), the debtors filed a joint petition claiming an exemption for the equity in their residence. The order for meeting of creditors in *Ragsdale* contained a provision pertaining to the time for objecting to exemption claims identical to the provision in this court's order in Mr. Penland's case. Further, a local rule of the Bankruptcy Court in *Ragsdale* also required that objec-

tions to exemptions be made "not later than 15 days after the first date set for the meeting of creditors." Nearly two months after the Code § 341 meeting of their creditors the debtors filed a complaint, pursuant to 11 U.S.C.A. § 522(f) (1979), to avoid Genesco's judicial lien against their residence. Genesco requested and received permission from the bankruptcy court, after the debtors' § 522(f) complaint was filed, to file an objection to the debtors' exemption claim for the equity in their residence. The bankruptcy court determined the debtors' residence was not exempt under Bankruptcy Code § 522; hence, the Genesco judicial lien was not avoidable because it did not impair an exemption to which the debtors were entitled. 11 U.S.C.A. § 522(f)(1) (1979). On appeal the debtors argued that the bankruptcy court erred in permitting Genesco to object to their exemption schedule beyond the 15 day period established under both the local rule and the court's order for meeting of creditors. The court of appeals disagreed, noting both the authority of the bankruptcy court under 11 U.S.C.A. § 105(a) (1979),[10] and the qualifying phrase "[u]nless the court extends the time," included in the bankruptcy court's order for meeting of creditors. Citing *Matter of Cipa*, 11 B.R. 968 (Bkrtcy.W.D.Pa.1981),[11] the Fourth Circuit stated that, "[T]he allowance of a late filing is a matter vested in the discretion of the Bankruptcy Judge." *Ragsdale*, 674 F.2d at 278.

Prior inaction of plaintiff Dickenson, despite his knowledge of Mr. Penland's nonentitlement to the claimed homestead exemption, is quite understandable. Indeed, an objection filed within 15 days from the meeting of Mr. Penland's creditors and the

---

**9.** Current Bankruptcy Rule 4003(b) recites in material part: *"Objections to Claim of Exemptions.* The trustee or any creditor may file objections to the list of property claimed as exempt *within 30 days* after the conclusion of the meeting of creditors held pursuant to Rule 2003(a) or the filing of any amendment to the list *unless, within such period, further time is granted* by the court." (Emphasis added.)

This rule, however, is inapplicable in the instant case.

**10.** This provision enacts: "The bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

**11.** The *Cipa* court excused a delay in objecting to the debtor's exemption claim because the delay did not prejudice the debtor's rights and declining to entertain the merits of the objection would have been "extremely unfair to the creditors of the debtor's estate." *Cipa*, 11 B.R. at 970.

sustainment thereof would have been irrelevant at the time because Dickenson had determined that Mr. Penland's survivorship interest in the entireties property was of inconsequential value to his estate. Moreover, the 15 day time bar recited in the court's order for a meeting of Mr. Penland's creditors is expressly subject to extension.

■ Under the circumstances, Dickenson's objection to Mr. Penland's homestead exemption claim has been timely filed. This conclusion does not prejudice Mr. Penland's rights. Equity disfavors allowing exemptions to a debtor to which he is not entitled *In re Hackett,* 13 B.R. 755 (Bkrtcy. E.D.Pa.1981),[12] and Mr. Penland is clearly not entitled to the exemption under Tenn. Code Ann. § 26–2–301 (1980). Furthermore, there is no indication in the record of improvements to the property since the closing of his bankruptcy case or that he has otherwise detrimentally relied upon Dickenson's previous inaction.

### IV

The final issue involves the trustee's claim to rent proceeds from the entireties property.[13] Between April 1982 and April 1983, inclusive, the debtors received rent proceeds from the disputed property totaling $5,250.00, equating to monthly payments of $425.00. During this same period they paid $4,277.00 ($329.00 monthly) in mortgage payments to Lumbermen's.

Plaintiff trustees request judgment against the debtors for all rent proceeds in excess of the mortgage payments paid to Lumbermen's since August 30, 1982, on the theory that neither debtor owned any interest in the entireties property as of the commencement of Mrs. Penland's bankruptcy proceeding on August 30, 1982. The trustees further request judgment for one-half of any rent proceeds exceeding the debtors' monthly mortgage payments to Lumbermen's for the period between March 26 and August 30, 1982. They contend that one-half of the rent proceeds during this interval (between the debtors' filing dates) are property of Mr. Penland's estate.

In contradistinction, the debtors maintain that no recovery for rent proceeds is allowable previous to the reopening on November 26, 1982, of Mr. Penland's case. Additionally, the debtors contend that permitting recovery for one-half the rent proceeds received between the filing dates disregards plaintiff Dickenson's No Asset Report in Mr. Penland's case.

■ Tenants by the entirety have the "joint right to the use, control, incomes, rents, profits ... and possession of the property so held, and neither may sell, encumber, alienate, or dispose of any portion thereof except his or her right of survivorship, without the consent of the other." *Robinson v. Trousdale County,* 516 S.W.2d 626, 632 (Tenn.1974). Mr. Penland's interest in the rent proceeds undeniably became property of his estate. 11 U.S.C.A. § 541(a)(6) (1979). Yet plaintiff Dickenson did not attempt to recover Mr. Penland's interest in these proceeds. Since Dickenson filed a Report of No Distribution he presumably determined that Mr. Penland's interest in the proceeds was of inconsequential value to his estate.[14] Consequently, Dickenson irreversibly abandoned his interest, as trustee, in Mr. Penland's rights to rent proceeds [15] received previous to the

---

12. *See also, In re Monzon,* 27 B.R. 50 (Bkrtcy.S. D.Fla.1983); *In re Vigil,* 23 B.R. 172 (Bkrtcy.D. Colo.1982). *Contra, In re Waters,* 22 B.R. 387 (Bkrtcy.N.D.Tex.1982).

13. On March 15, 1983, an agreed order was entered entitling mortgagee Lumbermen's to receive payments from the current rent proceeds of the entireties property. Rent proceeds in excess of the required monthly mortgage payment are being held in escrow by plaintiff Steinberg pending resolution of this case.

14. The rent proceeds between April 1982 and August 1982, inclusive, exceeded the mortgage payments during the same period by only approximately $480.00. Of course, Mrs. Penland was entitled to a joint interest in these funds.

15. This conclusion is not inconsistent with the court's determination that the trustees may sell the fee interest in the disputed entireties property. Although the filing of Mrs. Penland's petition altered the nature of the interest in the entireties property which could be sold to pay creditors, her filing was inconsequential insofar

reopening of Mr. Penland's case. Plaintiff Steinberg, as trustee for Mrs. Penland, is entitled to her interest in all postpetition rent proceeds. The value of this interest between her petition date and the reopening of her husband's case is $100.00.[16] Of course, the plaintiff trustees are jointly entitled to all rent proceeds from the entireties property in excess of the mortgage payments payable subsequent to November 26, 1982.

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 7052.

as the right of her husband's trustee to an interest in the rent proceeds from the entireties property. The right, wholly independent of her bankruptcy filing, was abandoned by Dickenson.

16. This sum represents an approximation of one-half of the rent proceeds in excess of the mortgage payments for the period between August 30 and November 26, 1982.