**In re Andrew C. SHELTON, Debtor.**

**Bankruptcy No. 93–34009–S.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

June 10, 1996.

---

Kenneth W. Paciocco, Richmond, VA, for Debtor.

Roy M. Terry, Jr., Douglas Scott, Durrette, Irvin & Bradshaw, P.C., Richmond, VA, for Trustee.

Gregg R. Nivala, Assistant U.S. Trustee, Office of United States Trustee, Richmond, VA.

### MEMORANDUM OPINION

BLACKWELL N. SHELLEY,
Bankruptcy Judge.

This matter comes before the Court on a motion by Keith L. Phillips, ("Phillips") to reopen the bankruptcy case of Andrew C. Shelton, ("Mr. Shelton"), and to consolidate the reopened case with the bankruptcy case of Mr. Shelton's wife, Deborah S. Shelton, ("Mrs. Shelton"), in order to administer jointly held assets. Phillips is Mrs. Shelton's Chapter 7 Trustee in In re: Deborah S. Shelton, Bankr.Case No. 95–31931–T.

This is a core matter over which this Court has jurisdiction under 28 U.S.C. §§ 1334, 157(b)(2)(A) and 157(b)(2)(O). After considering argument of counsel at a hearing on this motion held May 1, 1996, and the briefs

filed by both parties, the Court makes the following findings of fact and conclusions of law.

### Findings of Fact

Neither party presented evidence at the hearing on this matter. The Court therefore makes its decision based upon judicial notice of the schedules and other documents filed by both Mr. and Mrs. Shelton in their respective bankruptcy proceedings, and the explanations for some of those documents presented by counsel.

Mr. Shelton filed his Chapter 7 petition on September 30, 1993. In his petition, as amended, Mr. Shelton listed assets of $307,700.00, liabilities of $373,209.55, a total of 54 creditors, and unsecured, nonpriority debts of $119,759.54. Mr. Shelton listed three parcels of real property jointly owned with Mrs. Shelton as a tenancy by the entirety, and four properties owned by himself in fee simple.[1] One tenancy by the entirety property located at 4906 Green Run Court, (the "Green Run Court Property"), appeared to represent the Shelton's primary residence, and was encumbered by a joint obligation of Mr. and Mrs. Shelton. Mr. Shelton's schedules showed a value exceeding secured encumbrances of approximately $16,500 in the Green Run Court Property.

The remaining two tenancy by the entirety properties were two unimproved lots in Goochland County, Virginia, (the "Goochland County Property"). Mr. Shelton's schedules stated that the Goochland County Property was owned as tenancy by the entirety property with a value of $59,000. His schedules also showed that the land was encumbered by an obligation to Ben Allen, ("Allen"), in the amount of $18,200 under which Mr. Shelton, and not his wife, was obligated. Mr. Shelton claimed the Goochland County Property and the Green Run Court Property exempt under 11 U.S.C. § 522(b)(2)(B).

1. Two of the fee simple properties were later foreclosed upon after this Court granted the relevant secured creditors relief from the automatic stay imposed by 11 U.S.C. § 362. Mr. Shelton's petition stated an intention to surrender a third

property, located at 334 Crawford Street, to the secured mortgage holder. Mr. Shelton listed the fourth fee simple property, with a value of $5,500, as exempt under Va.Code § 34–4.

Mr. Shelton's schedules showed only four joint obligations with his wife; three of these, totaling $6,141.92, were unsecured, and the fourth was the obligation secured by the Shelton's residence, the Green Run Court Property.[2]

Sherman B. Lubman, ("Lubman"), was appointed Chapter 7 Trustee in Mr. Shelton's bankruptcy case, and Lubman filed a Trustee's Report of No Distribution on December 7, 1993. Mr. Shelton received his discharge on January 14, 1994, and his case was closed on January 20, 1994. The record contains no indication that Lubman attempted to sell the real property owned jointly by Mr. and Mrs. Shelton as tenants by the entirety to satisfy their joint obligations, notwithstanding the fact that Mr. Shelton's schedules showed a total equity value of approximately $57,300 in that property, and joint, unsecured debts of $6,141.92.

Mrs. Shelton filed her Chapter 7 petition on May 12, 1995, listing assets of $194,580.00 and liabilities of $159,266.80, to include unsecured, nonpriority debt of $24,360.09. Mrs. Shelton's schedules listed 13 creditors, a number of which appeared to represent the same debts listed in her husband's earlier petition.

But Mrs. Shelton's characterization of her debts, if true, cannot be wholly reconciled with Mr. Shelton's earlier bankruptcy schedules. For instance, presumably as a result of Mr. Shelton's discharge, Mrs. Shelton's schedules list individual, unsecured obligations to Lowes Home Center, Ted Lansing and NationsBank of Delaware. Mr. Shelton earlier characterized these same debts as joint obligations. But Mrs. Shelton lists a number of other debts, both as joint and individual, which are identical to the "individual" obligations listed by Mr. Shelton on his schedules.[3] Moreover, Mrs. Shelton lists one real property, known as 334 Crawford Street, (the "334 Crawford Street Property") as being owned with Mr. Shelton as a tenancy by the entirety, where Mr. Shelton earlier stated fee simple ownership of the same property.[4] Mrs. Shelton listed the Goochland Property and her primary residence, both of which are tenancy by the entirety properties owned with Mr. Shelton, as exempt in her bankruptcy case under 11 U.S.C. § 522(b)(2)(B).

At the hearing on this matter, Mr. Shelton's attorney provided some explanation for the inconsistencies in their schedules, stating that Mrs. Shelton listed some of Mr. Shelton's discharged debts on her schedules in an abundance of caution in an attempt to prevent the relevant creditors from asserting some claim against her in the future. Presumably, this precautionary scheduling would include the obligations to Massey Builders and Ruffin & Payne. *See supra* note 3. Mr. Shelton's counsel did not provide an explanation for the appearance of the same Massey Builders debt as an individual obligation on Mr. Shelton's schedules, but a joint obligation on Mrs. Shelton's schedules.

With respect to the obligation to Better Living, Mr. Shelton asserted that Better Liv-

---

2. Specifically, Mr. Shelton's schedules listed the following joint obligations with Mrs. Shelton:

| Creditor | Amount |
|---|---|
| Farm & Home Savings Assoc. | $ 72,078.07 (secured) |
| Lowes Home Center | $ 1,741.92 |
| Ted Lansing | $ 2,900.00 |
| Nations Bank of Del. | $ 1,500.00 |

3. Specifically, the obligations in question are described and compared below as they appear in Mr. and Mrs. Sheltons' bankruptcy schedules:

| | Mr. Shelton | | | Mrs. Shelton | |
|---|---|---|---|---|---|
| Creditor | Amount | Type | | Amount | Type |
| Ben Allen | 18,200.00 | I – Secur. | | 14,350.00 | J – Secur. |
| Massey Bldrs | 4,800.00 | I – Unsec. | | 4,800.00 | J – Secur. |
| Better Living | 13,424.04 | I – Unsec. | | 6,158.53 | I – Unsec. |
| Ruffin & Payne | 3,405.86 | I – Unsec. | | 3,405.86 | I – Unsec. |
| R.A. Siewers | 1,786.42 | I – Unsec. | | 1,786.42 | I – Unsec. |

4. Specifically, Mr. Shelton's schedules declare a fee simple ownership of the 334 Crawford Street Property, subject to a mortgage held by Fidelity Federal Savings Bank. Mr. Shelton's petition also stated an intention to surrender that property to the secured creditor. Conversely, Mrs. Shelton's schedules state that this same property is owned by Mr. and Mrs. Shelton as a tenancy by the entirety, subject to a mortgage held by Fidelity Federal Bank.

ing had obtained a pre-petition judgment against Mr. Shelton, which was discharged in his bankruptcy. Better Living then obtained a default judgment against Mrs. Shelton— after Mr. Shelton's discharge—making Better Living an individual, unsecured creditor of Mrs. Shelton. Mr. Shelton contends that Better Living was therefore not a joint creditor at the time of Mr. Shelton's petition, and was correctly identified as Mr. Shelton's individual creditor on his bankruptcy schedules. This explanation fails to state whether Mrs. Shelton was actually obligated to Better Living at the time of Mr. Shelton's bankruptcy, notwithstanding the fact that Better Living did not yet have a judgment against her.

Mr. Shelton, through counsel, did acknowledge at least two scheduling errors. With respect to the Ted Lansing and R.A. Siewers debts, Mr. Shelton's counsel asserted that Mr. Shelton was mistaken in his belief that those debts were his individual obligations. Mrs. Shelton had executed guarantees on those obligations, but Mr. Shelton had apparently forgotten this fact at the time he filled out his petition and schedules. Both creditors, Ted Lansing and R.A. Siewers, are now judgment lien creditors, and both Sheltons have apparently entered into a voluntary payment agreement with them. The Court notes that this explanation further adds to the confusion since the Ted Lansing debt is scheduled as a joint debt on Mr. Shelton's schedules, not as an individual debt as asserted by the Mr. Shelton's counsel.

Mr. Shelton asserts that with respect to the Goochland County Property, only three joint creditors exist. First, the Sheltons acknowledge that Allen holds a first deed of trust on the Goochland County Property, and is a joint creditor. Mr. Shelton does not explain why the obligation to Allen was listed as an individual debt in his schedules. And as stated above, Mr. Shelton also acknowledges that both Ted Lansing and R.A. Siewers are joint, judgment lien creditors. Mr. Shelton fails to explain why the obligations to Ted Lansing and R.A. Siewers remained joint obligations notwithstanding Mr. Shelton's earlier discharge, nor how Massey Builders became a secured joint creditor after Mr. Shelton's discharge, nor how Allen became a joint creditor after Mr. Shelton's discharge, nor the discrepancy in listing the ownership status of the 334 Crawford Street Property as fee simple on Mr. Shelton's schedules and tenancy by the entirety on Mrs. Shelton's schedules.

After reviewing the Sheltons' bankruptcy schedules and noting the inconsistencies between them, Phillips filed an objection to Mrs. Shelton's attempted exemption of the Goochland County Property on August 5, 1995. Phillips then entered into negotiations with the Sheltons in an attempt to reach a settlement of this matter. After those negotiations failed, on April 5, 1996, Phillips filed a motion to reopen Mr. Shelton's case, and to consolidate the reopened case with Mrs. Shelton's in order to administer the jointly held assets for the satisfaction of joint obligations.

### Conclusions of Law

The Bankruptcy Code permits the Court to reopen a closed case "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b) (West 1996). Moreover, the decision to reopen is left to the sound discretion of the Court. *Maryland Hotel Supply Co. v. Seats (In re Seats)*, 537 F.2d 1176, 1177 (4th Cir.1976).

Phillips contends that the existence of tenancy by the entirety property in the Sheltons' bankruptcy estates, combined with the serial nature of the Sheltons' bankruptcy petitions, establishes sufficient "cause" to reopen Mr. Shelton's bankruptcy case. More specifically, Phillips asks this Court to reopen Mr. Shelton's case, and to consolidate the reopened case with Mrs. Shelton's bankruptcy case in order to permit him to administer and liquidate the Goochland County Property—assets owned by the Sheltons as tenants by the entirety and claimed exempt by them under 11 U.S.C. § 522(b)(2)(B) in their individual bankruptcies—in order to satisfy claims of the Sheltons' joint creditors.

It is well settled in the Fourth Circuit that permitting debtors to harbor and protect tenancy by the entirety property from their joint creditors by filing serial individual bankruptcies may represent a legal fraud

**152**

upon the debtors' joint creditors. *Reid v. Richardson (In re Reid)*, 304 F.2d 351, 353 (4th Cir.1962) (applying § 2(8) of the Bankruptcy Act) (quoting *Phillips v. Krakower*, 46 F.2d 764, 765 (4th Cir.1931)). Moreover, it is equally well settled that it is within the discretion of the Court to find this potential "legal fraud" a sufficient cause to reopen a closed bankruptcy case. *Reid*, 304 F.2d at 355.

In a later decision, *In re Tyler*, this Court relied heavily upon the *Reid* analysis while applying the Bankruptcy Code to a case very factually similar to the matter currently before the Court. 27 B.R. 289 (Bankr.E.D.Va. 1983). In *Tyler*, the debtor filed for Chapter 7 protection, listing among his debts two notes upon which both he and his wife were jointly obligated. The *Tyler* debtor claimed his interest in certain real property exempt under § 522(b)(2)(B),[5] stating that he owned the property with his wife as tenants by the entirety.

Fourteen months after her husband's petition was filed, and six months after her husband's case was closed, the *Tyler* debtor's wife filed her own individual petition in bankruptcy, exempting the same tenancy by the entirety property under § 522(b)(2)(B). Relying upon *Reid*, this Court found that sufficient cause existed to reopen the *Tyler* debtor's bankruptcy case in order to permit a trustee to liquidate the couple's tenancy by the entirety property for the satisfaction of their pre-bankruptcy joint obligations.

■■■ At the heart of the *Tyler* analysis was the trustee's ability to liquidate the tenancy by the entirety property, notwithstanding the couple's attempt to exempt that property under § 522(b)(2)(B). In general, § 522(b)(2)(B) permits a debtor the ability to exempt from the bankruptcy estate the debtor's interest in tenants by the entirety property which is immune from process under state law. 11 U.S.C. § 522(b)(2)(B) (West 1995). But it is well settled in the Fourth Circuit that a trustee may administer tenancy by the entirety property for the benefit of particular creditors under 11 U.S.C. § 363(h),[6] notwithstanding the debtor's attempt to exempt that property under § 522(b)(2)(B), so long as state law does not protect that property from attack by those particular creditors. *Sumy v. Schlossberg*, 777 F.2d 921 (4th Cir.1985). Under Virginia law, property owned as tenants by the entirety is immune from the claims of individual creditors, and is reachable only by joint creditors of the owning spouses. *See Vasilion v. Vasilion*, 192 Va. 735, 66 S.E.2d 599 (1951); *Davison v. Virginia National Bank (In re Davison)*, 493 F.2d 1220 (4th Cir.1974). Thus, although *Sumy* applied Maryland law, *Id.* at 924–25, a number of cases have established and upheld the trustee's ability, under Virginia law, to liquidate and administer tenancy by the entirety property for the benefit of joint creditors. *See, e.g., Tyler*, 27 B.R. at 291; *Chippenham Hosp., Inc. v. Bondurant*, 716 F.2d 1057, 1059 (4th Cir.1983); *Cordova v. Mayer (In re Cordova)*, 73 F.3d 38, 40 (4th Cir.1996); *In re Wickham*, 127 B.R. 9, 10 (Bankr.E.D.Va.1990).

---

**5.** Section 522(b)(2)(B), as applied to a Virginia debtor, provides that debtors may exempt from property of the bankruptcy estate:

(B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.

11 U.S.C. § 522(b)(2)(B) (West 1993).

**6.** In relevant part, § 363(h) states that:

(h) Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivid-

ed interest as a tenant in common, joint tenant, or tenant by the entirety, only if—

(1) partition in kind of such property among the estate and such co-owners is impracticable;

(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

(4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(h) (West 1993).

*Tyler* is but one of a series of decisions which stands for the proposition that the Court may exercise its discretion to reopen a bankruptcy case in order to permit the liquidation or pursuit of tenancy by the entirety assets. *See, e.g., Reid,* 304 F.2d at 355; *Krakower,* 46 F.2d at 766; *Seats,* 537 F.2d at 1178–79. The Courts's analysis therefore shifts to whether Phillips has presented sufficient cause to reopen Mr. Shelton's bankruptcy case based upon the particular facts and circumstances of this matter. In *Tyler,* this Court identified several factors to be considered in addition to the mere existence of tenancy by the entirety property and serial filing prior to a determination of "cause" for reopening a closed case.

"The most important factor is whether the length of time between the discharge and the reopening of the case provides a basis for the defense of laches.... Second, the Court should determine whether the party seeking the reopening was dilatory in failing to ask for relief from the automatic stay and a stay of discharge in order to reduce his joint obligation to a joint judgment as was done in [*Phillips v. Krakower,* 46 F.2d 764 (4th Cir.1931) ].... Third, the Court should consider whether the debtor's tenants by the entirety property has been substantially improved since the first spouse received his discharge in bankruptcy."

*Tyler,* 27 B.R. at 292–93.

Assessing these factors, the Court concludes that Phillips has presented sufficient cause to reopen Mr. Shelton's bankruptcy case. Mrs. Shelton filed her bankruptcy petition only 19½ months after Mr. Shelton filed his petition and only 16 months after Mr. Shelton's case was closed. The Court can see little difference between these time periods and the parallel 14– and 6–month periods in *Tyler,* nor any change in circumstances which caused Mrs. Shelton to file a bankruptcy petition so soon after her husband.

Mr. Shelton failed to provide any explanation or justification for his wife's individual bankruptcy petition following his own so closely, particularly in view of the large number of common obligations. Seven of the nine unsecured creditors scheduled by Mrs. Shelton, representing 87.8% of her scheduled, unsecured debt, are identical to the unsecured debts listed by Mr. Shelton. All four of the secured creditors scheduled by Mrs. Shelton are also shown on Mr. Shelton's schedules.[7] An analysis of the couple's schedules implies that the debts which prompted Mrs. Shelton's bankruptcy petition existed when her husband filed his individual petition, persuading the Court that any delay in filing Mrs. Shelton's bankruptcy petition was at least in part an an attempt to shield tenancy by the entireties properties from joint creditors.

■ While this Court stops well short of any holding which presumes misconduct on the part of serial filing husbands and wives, and which would implement a threshold requirement that married debtors with tenancy by the entirety property fully explain their serial filing, the Court will nonetheless consider the congruity of the Sheltons' petitions, and apparent nonexistence of justification for the individual filings, along with the time period between the filings. Moreover, based upon the circumstances of this case, the Court sees no basis for the "defense of laches" in the delay between the discharge and the motion to reopen Mr. Shelton's case.

Phillips, the party seeking the reopening, has not been dilatory in his pursuit of reopening relief. The Court notes that Phillips delayed filing the motion currently before the Court until April 5, 1996, nearly 11 months after Mrs. Shelton filed her Chapter 7 petition. Phillips asserts that any delay was caused by his attempt to enter into a negotiated settlement with the Sheltons. And Phillips points to the fact that on August 5, 1995, he filed an objection to Mrs. Shelton's attempt to exempt the Goochland County Property under § 522(b)(2)(B) in Mrs. Shel-

---

7. As previously stated, the Sheltons' $4,800.00 obligation to Massey Builders is scheduled as unsecured in Mr. Shelton's schedules, but listed as secured by a valueless lien in Mrs. Shelton's schedules. If Massey Builders is considered an unsecured obligation, then eight out of ten of Mrs. Shelton's unsecured creditors, or 89.8% of Mrs. Shelton's scheduled, unsecured debt is listed in Mr. Shelton's earlier schedules.

ton's bankruptcy case. Thus, as stated above, any delay introduced by Phillips' decision to enter into settlement negotiations did not result in prejudice to any of the parties. The Sheltons were on notice at least by August 5, 1995—3 months after Mrs. Shelton's petition and 19 months after Mr. Shelton's case was closed—that Phillips intended to pursue liquidation of the Goochland County Property, and the Court chooses not to penalize the Sheltons' joint creditors for Phillips' attempts at settlement prior to bringing this action.

With respect to the third *Tyler* criteria, Mr. Shelton failed to provide any evidence that he had appreciably improved the Goochland County Property. Both of the Sheltons' schedules listed the Goochland County Property with a value of $59,000. Mr. Shelton's schedules showed an encumbrance of $19,000 to Allen, while Mrs. Shelton's schedules showed an encumbrance of $14,350, an increase in equity value of $4,650. But Mr. Shelton's counsel stated that due to the Sheltons' failure to make scheduled mortgage payments, the Sheltons' mortgage obligation to Allen on the Goochland County Property now actually exceeds the $19,000 shown in Mr. Shelton's original schedules. Thus, Mr. Shelton failed to provide evidence of any increase in equity, or any material improvements in the tenancy by the entirety property which would militate against Phillips' motion.

But the Court's analysis does not end here. Mr. Shelton asserts that given the facts and circumstances, reopening his case is not appropriate. First, Mr. Shelton argues that when Lubman closed his bankruptcy case without administering the Goochland County Property, Lubman abandoned that property under 11 U.S.C. § 554(c) (West 1995). And Mr. Shelton goes on to conclude that because the trustee "abandoned" the Goochland County Property, Phillips cannot now "unabandon" that property. Secondly, Mr. Shelton also argues that there exist only three joint creditors—Allen, R.A. Siewers and Ted Lansing—all of which have judgment liens on the Goochland County Property which together total more than the value of the property, and all of which have agreed to pay-

ment terms with Mr. and Mrs. Shelton. Thus, it is Mr. Shelton's position that the only creditors who will receive a distribution from the trustee's liquidation of the Goochland County Property have already agreed to alternative payment arrangements, negating the need to liquidate the property.

Mr. Shelton also argues that Better Living is not a joint creditor since Better Living received its default judgment against Mrs. Shelton after Mr. Shelton's discharge. Thus, due to the absence of unprotected joint creditors, Mr. Shelton argues that *Sumy* is inapposite, and there exists no cause to reopen the case. Lastly, Mr. Shelton argues that reopening Mr. Shelton's bankruptcy case would unnecessarily add uncertainty to finality of bankruptcy proceedings, and interfere with the "fresh start" that debtors are permitted and expect under the code.

 Addressing Mr. Shelton's first argument, this Court is convinced that it is within the Court's discretionary powers to reopen this case and by doing so, to permit the appointed trustee to administer assets that, absent the reopening, may otherwise have been considered abandoned.

Section 554 of the Bankruptcy Code provides three methods by which property of the estate may be abandoned by the trustee. 11 U.S.C. § 554 (West 1995). After notice and a hearing, property that is burdensome to the estate may be abandoned by the trustee either on his own motion, *Id.* at § 554(a), or by order of the Court at the request of a party in interest. *Id.* at § 554(b). But without notice and a hearing, and unless the Court orders otherwise, "any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title." *Id.* at 554(c). This is generally referred to as a "technical abandonment."

The Goochland County Property was properly scheduled by Mr. Shelton, and Lubman apparently abandoned that property to the debtor under § 554(c) when Mr. Shelton's case was closed. Mr. Shelton relies upon *In re Sutton*, 10 B.R. 737, 740 (Bankr.E.D.Va. 1981) (Bostetter, J.), for the proposition that abandonment of property by the trustee is

irrevocable, and therefore argues that the Goochland County Property cannot now be "unabandoned" by reopening Mr. Shelton's bankruptcy case.

The Court disagrees. While there appears little doubt that Lubman technically abandoned the Goochland County Property under § 554(c) when he failed to administer that asset prior to the closure of Mr. Shelton's case, *see Stanley v. Sherwin Williams Co. (In re Stanley)*, 156 B.R. 25, 26 (Bankr. W.D.Va.1993), the Court nonetheless concludes that upon reopening, the Goochland County Property will be available to the trustee for administration.

■ First, a plain reading of § 554(c) reveals that Courts have the discretion to modify or revise any "technical abandonment" simply by ordering otherwise. 11 U.S.C. § 554(c) (West 1995). In *Neville v. Harris (In re Neville)*, the District Court upheld a Bankruptcy Court decision to reopen a case in order to administer assets which were technically abandoned under § 554(c). 192 B.R. 825 (D.N.J.1996). In doing so, the *Neville* Court adopted an interpretation of § 554(c)—specifically the "unless the Court orders otherwise" language of § 554(c)—which would permit a Court to reopen a bankruptcy case and undo a technical abandonment under appropriate circumstances. *Id.* at 832. The *Neville* Court found that § 554(c) did not necessarily restrict Courts to the time period prior to case closure with respect to the Court's ability to limit or modify any technical abandonment by the trustee. *Id.* This Court agrees, and concludes that it is possible, under appropriate circumstances, for the Court to modify or limit the extent of property that is technically abandoned under § 554(c), even after a debtor's case is closed.

Other Courts have interpreted § 554(c) to include an implied requirement that the trustee must have made "an intelligent decision" with respect to the abandonment, and that § 554(c) should not be interpreted "to inadvertently deny creditors the benefit of a substantial asset." *In re Schmid*, 54 B.R. 78, 80 (Bankr.D.Ore.1985). *See also, In re Lintz West Side Lumber, Inc.*, 655 F.2d 786 (7th Cir.1981) (holding that the Court could revoke an express abandonment if that abandonment was the result of an inadvertent error and the parties were not unduly prejudiced by the revocation); *Mele v. First Colony Life Ins. Co., (In re Mele)*, 127 B.R. 82, 85–86 (D.D.C.1991) (holding that to prove abandonment under § 554(c), it must be shown "at a minimum that the trustee made a reasonable inquiry consistent with his statutory duties *to the estate* and *to the creditors* as to the value of the property...." (emphasis in original)); *Sutton*, 10 B.R. at 740–41 (recognizing at least three exceptions to otherwise irrevocable abandonment, to include unintentional or inadvertent abandonment).

While the Court has no evidence with respect to Lubman's decision making process, the Court nonetheless is concerned that Lubman may not have been afforded the ability to make an informed decision with respect to administering the Goochland County Property due to the state of the information contained within Mr. Shelton's schedules. Mr. Shelton's schedules did not accurately reflect the extent of the Sheltons' joint obligations, and may not have afforded Lubman with the ability to make a decision in the best interests of the estate or the relevant creditors.

■ Lastly, and perhaps most persuasively, Courts have found that once a case is reopened, the original case is revived, "including all procedural and substantive rights of the debtor" and presumably the trustee. *In re Cassell*, 41 B.R. 737, 740 (Bankr. E.D.Va.1984). Following this logic, reopening and thereby reviving a debtor's case would effectively negate any technical abandonments which may have occurred when the case was originally closed. In essence, reopening a closed case restores the "status quo" of the original case prior to closing, and would revive the trustee's right to administer all property that was in the estate prior to the initial closure.

Based upon the foregoing, by ordering Mr. Shelton's case reopened in order to administer the Goochland County Property, the Court effectively restores the prior estate, to include the Goochland County Property, either by virtue of the reopening itself, *Cassell*, 41 B.R. at 740, or simply as a result of the

Court's specific order. *Neville,* 192 B.R. at 832. The Court is particularly persuaded by this line of reasoning since the *Tyler* factors, to be considered prior to reopening the case, address the very same issues which would militate for or against bringing otherwise abandoned property back into the revived bankruptcy estate. For instance, if the debtor had substantially improved the otherwise abandoned property, or if the failure to properly administer that property had been the fault of the trustee, or if a substantial time period had passed with apparent ownership of the property resting in the debtor, then the Court would deny any motion to reopen.

Thus, prior to reopening the case and restoring technically abandoned property to the estate, the Court considers all of the factors cited by Mr. Shelton as important grounds not to reopen the case. It would seem that the very act of reopening the closed case under these circumstances implicitly acknowledges the Court's reasoned determination that the otherwise abandoned property should be returned from the debtor to the debtor's estate for potential administration by the trustee.

This outcome would appear to be at odds with the statement in *Sutton* to the effect "that once an asset of the estate is abandoned, it is no longer part of the estate and is effectively beyond the reach and control of the trustee." *Sutton,* 10 B.R. at 739. Moreover, *Sutton* opined that abandonments may be deemed irrevocable despite any subsequent discovery by the trustee that the abandoned asset had value to the estate. *Id.* at 739–40 (quoting 4 *Collier on Bankruptcy,* ¶ 554.02 at p. 554–58 (15th ed. 1980)). But *Sutton* dealt specifically with a trustee's express abandonment under § 554 prior to the closure of a case, not a technical abandonment triggered by case closure which might be undone with the reopening of that case. *Id.* In addition, the *Sutton* Court acknowledged the existence of two and possibly three exceptions to the irrevocability of an abandonment, all of which were inapplicable in that case. *Id.* at 740. Thus, while a trustee's abandonment of an asset should not be lightly undone, even the *Sutton* Court ac-

knowledged that under some circumstances, abandonment is not irrevocable.

The Court reaches a similar conclusion with respect to Mr. Shelton's other arguments. Finality, while important, is appropriate only when the provisions of the Bankruptcy Code have been met. In this case, the Sheltons appear to have attempted to perpetrate the "legal fraud" which was denounced in *Reid* and so many other decisions. 304 F.2d at 353. After considering the relevant policy and practical considerations, to include the factors cited in *Tyler,* the Court concludes that reopening Mr. Shelton's case to permit the trustee to administer the tenancy by the entirety assets for the benefit of joint creditors outweighs any threat to the sanctity of finality of bankruptcy cases.

■ With respect to Mr. Shelton's other arguments—that there exists no unprotected joint creditors and that the trustee's sale of the Goochland County Property would not benefit any non-lien creditors—the Court is convinced that those facts remain to be determined. Even considering Mr. Shelton's proffered testimony in its best light, and after applying Mr. Shelton's explanations to the relevant schedules, the Court is unable to make any final determination with respect to the existence and priority of creditors. The Sheltons' efforts to pay some, but perhaps not all, of their creditors should be condoned. But in light of the non-existence of any reaffirmation agreement, the Sheltons' voluntary efforts do not constitute a valid reason to deny the trustee an opportunity to administer relevant assets for the benefit of the Sheltons' joint creditors.

The facts of this matter demonstrate the existence of two bankruptcies with poorly drafted schedules which cannot be reconciled. If, after sufficient investigation, the trustee determines that there exists no reason to liquidate the Goochland County Property, then the Sheltons' interests in that property will presumably be abandoned back to them. But after reviewing the schedules and information presented, this Court concludes that an investigation into the existence and status of the Sheltons' joint obligations is appropriate, and would best be accomplished by an

appointed trustee. Thus, cause does in fact exist to reopen Mr. Shelton's bankruptcy case for the express purpose of investigating the existence of joint debts, and to consolidate Mr. Shelton's case with that of Mrs. Shelton's for the purpose of administering tenancy by the entirety property.

The Court will enter an appropriate Order contemporaneously with this Memorandum Opinion.